AETNA U.S. HEALTHCARE, INC, on behalf of itself and its subsidiaries, and all others similarly situated, Plaintiff,

v.

Hoechst AKTIENGESELLSCHAFT, Hoechst Marion Roussel, Inc., and Andrx Pharmaceuticals, Inc., Defendants.

Civil No. 99–193 (RCL).

United States District Court,
District of Columbia.

April 30, 1999.

Jack C. Sando, Bethesda, MD, for plaintiff.

James D. Miller, Peter M. Todaro, King & Spalding, Washington, DC, for defendant Andrx Pharmaceuticals.

Paul S. Schleifman, Shook, Hardy & Bacon, L.L.P., Washington, DC, for defendant Hoechst Marion Roussel, Inc.

*MEMORANDUM AND ORDER*

LAMBERTH, District Judge.

This matter comes before the court on Plaintiff's Motion [13] to Remand for Lack of Subject Matter Jurisdiction and Defendant Andrx Pharmaceuticals, Inc.'s Motion [12] for a Stay Pending Multidistrict Coordination. Upon consideration of these motions and the applicable oppositions, replies, and supplemental submissions, the court will DENY plaintiff's motion to remand and GRANT defendant Andrx Pharmaceuticals, Inc.'s motion for a stay pending multidistrict coordination.

## I. Introduction

Plaintiff originally filed this action in the Superior Court of the District of Columbia. In its complaint, plaintiff avers antitrust claims for treble damages under the District of Columbia Restraint of Trade Act, D.C.Code §§ 28–4502 & –4503; for injunctive and equitable relief under the District of Columbia Restraint of Trade Act, D.C.Code § 28–4508; and for "unjust enrichment," or disgorgement, against defendants.

All defendants subsequently joined to file a notice of removal of this action to federal court.[1] Defendants base the subject matter jurisdiction for this removal upon federal-question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331–1332. The court finds that it would have had diversity jurisdiction over this matter had plaintiff brought its case in federal court originally.[2] Defendants therefore have a statutory right to removal of this case under 28 U.S.C. §§ 1441 & 1446 and, consequently, plaintiff's motion to remand must be denied.

Plaintiff filed this class-action suit against defendants, pharmaceutical drug manufacturers, seeking remedies provided under the District of Columbia's antitrust statute. Plaintiff alleges that defendants unlawfully contracted and conspired to prevent the introduction into the market of less expensive generic versions of Cardizem CD, a prescription drug used for the treatment of angina, hypertension, and the prevention of heart attacks and strokes.

The primary illegal act of agreement among the defendants alleged is referred to by plaintiff as the Hoechst–Andrx Agreement. In this agreement, according to plaintiffs, defendants Hoechst Aktiengesellschaft and Hoechst Marion Rousset, Inc. ("the Hoechst defendants"), which were the pioneer manufacturers of Cardizem CD, and Andrx, which is the first producer of a generic version of the drug, entered into an agreement that effectively prevented any generic competition for Cardizem CD in the United States marketplace. In exchange for the Hoechst defendants' agreement to pay forty million dollars annually to Andrx, Andrx agreed not to market its generic Cardizem CD product in the United States and to withdraw its counterclaims against the Hoechst defendants in pending patent litigation between the defendants. This agreement allegedly has the effect of precluding other generic competition from entering the market because, according to the complaint, other generic manufacturers cannot market their generic product until a 180–day exclusivity period ends. As a result of the interplay between the patent laws and the Hoechst–Andrx Agreement, however, this 180–day exclusivity period has not yet begun to run.[3] Thus, plaintiff alleges that defendants, in violation of the District of

---

1. Defendants have also filed before the Judicial Panel on Multidistrict Litigation a motion to consolidate and transfer related cases pursuant to 28 U.S.C. § 1407. According to Multidistrict Panel Rule 1.5, the pendency of this motion "does not affect or suspend orders and pretrial proceedings in the district court in which [this] action is pending and does not in any way limit the pretrial jurisdiction of [this] court." 181 F.R.D. 1, 3 (1998). Consequently, in the interest of judicial economy, the court will first consider whether this action should be remanded to Superior Court.

2. Because diversity jurisdiction is present and resolves the issue of removal, the court expresses no opinion as to the merits of the parties' arguments as to subject-matter jurisdiction.

3. According to plaintiff, defendant Andrx, as the holder of the certification of the first generic version of Cardizem CD, is entitled to a 180–day period of market exclusivity before any other generic competitor can enter the same market. This period does not begin to run until defendant Andrx sells its generic drug or obtains a final judgment of non-infringement in the patent litigation it is currently defending in Florida against the Hoechst defendants. Thus, defendant Andrx and the Hoechst defendants can effectively exclude other generic competitors by manipulating the commencement of the 180–day exclusivity period, according to plaintiff's allegations.

Columbia antitrust statute, have agreed to prevent the introduction of generic substitutes for Cardizem CD to preserve the monopoly enjoyed by the Hoechst defendants, as the pioneer company of the drug. As a result, and on behalf of itself, its subsidiaries, and all other persons similarly situated, plaintiff claims that it is and has been forced to pay artificially inflated, monopoly prices for Cardizem CD.

This theory of antitrust liability takes the form of three claims for relief, the third of which is determinative of the issues presented in the current context. Specifically, plaintiff asserts its third claim, for "unjust enrichment," in the following manner:

> The Hoechst Defendants have benefited from the acts alleged ... resulting in the overpayment by plaintiff and the Class for Cardizem CD.... Defendant Andrx has benefited from the acts alleged ... to the extent of the payments it has received and will continue to receive under the Hoechst–Andrx Agreement. The funds for such payments by Hoechst are derived from the plaintiff's and the Class'[s] overpayment for Cardizem CD.... It would be inequitable for Andrx to be permitted to retain any of the proceeds of the Hoechst–Andrx Agreement.... It would be inequitable for the Hoechst Defendants to be permitted to retain any of the plaintiff Class'[s] overpayment for Cardizem CD derived from their unfair and unconscionable methods, acts and trade practices described above, including but not limited to the Hoechst–Andrx Agreement....

Plaintiff's Complaint ¶¶ 136–139. Based on these facts, the court must now decide whether defendants have properly removed this lawsuit to this federal court and, if the removal was proper, whether this litigation should be stayed pending the Judicial Panel on Multidistrict Litigation's ruling on defendants' motion to consolidate and transfer.

## II. *Analysis*

### A. *General Principles*

A party asserting federal jurisdiction bears the burden of proving that the action has been properly removed to federal court. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Defendants jointly seek to remove this case under the removal authority provided by 28 U.S.C. § 1441. Section 1441 states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). For a district court to have proper original diversity jurisdiction, the requirements of 28 U.S.C. § 1332 must be met. Under Section 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332. Even if such an action meets the requirements of 28 U.S.C. § 1332, however, it is removable only if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

No one contests that the parties are completely diverse for the purposes of 28 U.S.C. § 1332 or that none of the defendants is a citizen of the District of Columbia. Instead, the dispute centers around the final requirement for original diversity jurisdiction and, consequently, defendants' last hurdle in achieving the proper removal of this case—the amount-in-controversy requirement.

The amount-in-controversy dispute presented is focused on two discrete issues: (a) whether plaintiff's complaint alleges a claim for the disgorgement of certain monies earned by defendants; and (b) if such

a disgorgement claim exists, whether this allegation states an integrated claim arising from a common right of the class that can be collectively used to satisfy the $75,000 amount-in-controversy requirement.

## B.  *Disgorgement Claim*

■ The court finds that plaintiff's complaint alleges a claim for disgorgement. Paragraphs 138–139 of the complaint state that "it would be inequitable for Andrx to be permitted to retain any of the proceeds of the Hoechst–Andrx Agreement" and that "it would be inequitable for the Hoechst Defendants to be permitted to retain any of the plaintiff Class'[s] overpayment for Cardizem CD." This language, captioned by plaintiff as a claim for "unjust enrichment," states a colorable claim for the disgorgement of profits resulting from the overpayments that defendants earned as the result of their allegedly illegal agreement in restraint of trade. *See In re Corriea,* 719 A.2d 1234, 1240 (D.C.1998) (holding that "[t]he remedy of disgorgement, much like that of a constructive trust, is meant 'to provide just compensation for the wrong', not to impose a penalty; it is 'given *in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment.'*" (emphasis added) (citing *Sheldon v. Metro–Goldwyn Pictures Corp.,* 309 U.S. 390, 399, 60 S.Ct. 681, 84 L.Ed. 825 (1940))); *see also Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (stating that "[a]n action for disgorgement . . . is a remedy only for restitution . . . . Restitution is limited to 'restoring the status quo and ordering the return of that which rightfully belongs'" to the plaintiff). Given plaintiff's averments of unjust enrichment and plaintiff's statements that it would be inequitable for defendants to retain this money—aside from any action at law entitling any individual plaintiff to their discrete, specific overpayment—the court reads the complaint to allege a claim for disgorgement. As discussed below, the language of the complaint, especially as to defendant Andrx, shows that plaintiff seeks to disgorge a certain sum of money—the unjust enrichment—because it would be "inequitable" for defendants to keep this sum.

The court's interpretation of the plain language of the complaint is further supported by other court's readings of substantially similar language which led them to the same conclusion. Three other district courts have been presented with motions to remand, determined that the presence or absence of a disgorgement claim was determinative, and found that substantially similar language in plaintiff's complaint alleged a disgorgement claim. *See Betnor, Inc. v. Hoechst Aktiengesellschaft,* Civ. No. C–98–3609 (MHP), Memorandum and Order at 10–11 (N.D.Cal. Apr. 14, 1999); *Sams v. Hoechst Aktiengesellschaft,* Civ. No. 2:98–348, Order at 3 (E.D.Tenn. Apr. 9, 1999); *Zuccharini v. Hoechst AG,* Civ. No. 98–74043(NGE), Transcript of Hearing at 17 (E.D.Mich. Dec. 2, 1998). The court agrees with these assessments and, accordingly, finds that plaintiff's complaint alleges a claim for disgorgement.

## C.  *Aggregation*

Neither side disputes the general rule that each member of the plaintiff's class must independently satisfy the jurisdictional amount-in-controversy requirement to meet the elements of 28 U.S.C. § 1332. *See Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Defendants do not claim that each member of the plaintiff class independently has sustained greater that $75,000 in damages. Instead, both sides focus on what has been characterized as an exception to this general rule. As both *Zahn* and *Snyder* state, the value of the claims of the entire class can be considered collectively against the statutory threshold when the members of the class "unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,*

394 U.S. at 335, 89 S.Ct. 1053; *Zahn*, 414 U.S. at 294, 94 S.Ct. 505. In other words, as often stated by other courts, plaintiff's claims can be aggregated when they make an integrated claim. *See, e.g., Manufacturers Cas. Ins. Co. v. Coker*, 219 F.2d 631, 634 (4th Cir.1955).

■ Although the case law and commentary on this issue admittedly show that what is and what is not an aggregable claim is sometimes less than clear,[4] plaintiff's claim for disgorgement, as described in the complaint, is not within the zone of doubt. As stated above, plaintiff's complaint claims that, without reference to any actual damages sustained by any individual plaintiff, defendants must disgorge the profits derived from their illegal anticompetitive activities, including the Hoechst–Andrx Agreement.[5] If any given plaintiff does not collect his, her, or its share, then it does not change the amount of profits of which defendants must be disgorged. Thus, according to the complaint, the plaintiff class has a collective right to a disgorgement in the amount of the unjust enrichment, and that amount does not depend upon the number of plaintiffs. This is precisely the type of scenario in which the Court of Appeals for the Sixth Circuit held that a plaintiff's claims must be considered integrated and aggregable. In *Sellers v. O'Connell*, the court of appeals stated that "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." 701 F.2d 575,

579 (6th Cir.1983). As described above, this is the situation presented by plaintiff's disgorgement claim. Moreover, based on the plain language of plaintiff's complaint, the disgorgement remedy would inure to the benefit of the class rather than vindicate any alleged violations of individual rights. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 n. 14 (11th Cir. 1996). This further supports the conclusion that plaintiff's claim of disgorgement must be aggregated.

The three other district courts to address this issue in cases related to the instant matter reached the same conclusion. *See Betnor, Inc. v. Hoechst Aktiengesellschaft*, Civ. No. C–98–3609 (MHP), Memorandum and Order at 10–11 (N.D.Cal. Apr. 14, 1999); *Sams v. Hoechst Aktiengesellschaft*, Civ. No. 2:98–348, Order at 3 (E.D.Tenn. Apr. 9, 1999); *Zuccharini v. Hoechst AG*, Civ. No. 98–74043(NGE), Transcript of Hearing at 17 (E.D.Mich. Dec. 2, 1998).[6] This conclusion is also consistent with the existing case law in this circuit. *See National Welfare Rights Org. v. Weinberger*, 377 F.Supp. 861, 866 (D.D.C.1974). In *NWRO*, Judge Pratt recited the two tests available when determining whether a class has an aggregable interest. In the "interest distribution test," an aggregable claim exists "when the adversary of the class has no interest in how the claim is to be distributed among the class members." *Id.* (citation omitted). This is the same factor described above from *Tapscott v. MS*

4. *See* 14B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3704, at 127 (1998) ("The rules relating to aggregating multiple claims to satisfy the amount-in-controversy requirement are in a very unsatisfactory state. The tradition and principles in this area have evolved haphazardly and with little reasoning. They serve no apparent policy and their application to a significant degree turns on a mystifying conceptual test.").

5. This allegation is clearest as to defendant Andrx because there is a bare allegation of disgorgement.

6. Plaintiffs point to the Alabama district court's granting of plaintiff's motion to remand as support for its current motion before this court. The Alabama case, however, supports this court's reasoning. In the Alabama case, plaintiff's complaint apparently contained no similar allegations that would state a claim for disgorgement. Because this finding is determinative, the absence of such a finding leading to remand is consistent with the court's reasoning described in this opinion.

*Dealer Serv. Corp.,* 77 F.3d 1353, 1359 n. 14 (11th Cir.1996), which, as the court has already explained, supports aggregation in this case. The second test, the "essential party test," calls for aggregation "when none of the class members could bring suit without directly affecting the rights of his co-parties." *Id.* (citation omitted). This is the same factor described above from *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983), which, as described above, also supports aggregation in this case.

The cases cited by plaintiff are not to the contrary. For example, plaintiff primarily relies upon *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418 (2d Cir.1997), to support its position that it does not seek to enforce any type of collective right or interest in this lawsuit. In *Gilman,* the putative plaintiff class was seeking to recover for certain payments made to plaintiffs' stock brokers by the executors of the stock brokers' orders. No one disputed the premise that none of the individual plaintiffs would satisfy the amount-in-controversy requirement individually. As in this case, the defendants relied upon an aggregation theory, arguing that the relevant payments were put into a common fund and, therefore, gave plaintiffs a common right or interest in a given res. The Court of Appeals for the Second Circuit properly rejected this argument, however, stating that "[t]he only right or title allegedly held by the [plaintiffs] is the right to sue BHC for the undisclosed extracontractual benefit that [the defendant stock brokers'] derived from their securities trades; that right is distinct to each plaintiff, and is based on [the defendant stock brokers'] handling of that person's separate transac-

tions." *Id.* at 1425. This distinction, however, is exactly the reason that plaintiff's argument fails in the case now before this court. Plaintiff's allegation of disgorgement against Andrx, for example, does not depend, rely upon, or arise out of the vindication of individual rights of the putative class members. In the words of the complaint, disgorgement is appropriate because "[i]t would be inequitable for Andrx to be permitted to retain *any* of the proceeds of the Hoechst–Andrx Agreement." Complaint ¶ 138. This statement, in the context of the allegations in the complaint, leads this court to believe that plaintiff, on behalf of the putative class, seeks to recover the amount that Andrx has been unjustly enriched, as the caption states, and not the individual overpayment amounts.[7]

In summary, the case law on point from this circuit corroborates the conclusion reached by the court based upon the prevailing law from other jurisdictions. Plaintiff's claim for disgorgement does not depend upon the vindication of individual class members' rights, but instead upon the disgorgement of money alleged to be unlawfully and inequitably held by defendants, particularly defendant Andrx. Defendants have no interest in how the claim is to be distributed among the class members because, if plaintiff was to prevail on its claim as alleged, the number of other plaintiffs to be paid would not reduce or increase the amount of money to be disgorged. Plaintiff's claim for disgorgement must be considered one seeking to recover under a single collective right in which the putative class has a common and undivided interest and therefore may be considered collectively when making the amount-in-

---

7. Plaintiff also points to *Pierson v. Source Perrier, S.A.,* 848 F.Supp. 1186 (E.D.Pa.1994) as support for its argument that the claims described in the complaint should not be aggregated. Specifically, plaintiff points to the *Pierson* court's statement that "plaintiffs' claims [including one for disgorgement] cannot be aggregated simply because they frame their prayer for damages as equitable, rather than legal, relief." *Id.* at 1189. This court does not so hold today. It is not only the equitable nature of plaintiff's claims, but the fact that the disgorgement as to defendant Andrx, for example, must be done (presumably in favor of plaintiff and the class members) because it would be inequitable for defendant Andrx to retain this unjust enrichment. Put another way, it is not a matter of equitable versus legal relief; it is a matter of suing upon a collective versus an individual right.

controversy determination. By the complaint's own terms, the illegal agreement among the defendants includes payments in contravention of law of at least forty million dollars per year. This agreement is the primary basis for plaintiff's allegations. Accordingly, the court finds that the amount-in-controversy exceeds $75,-000, as required by 28 U.S.C. § 1332. Therefore, plaintiff's motion to remand will be denied.

■ The court will grant defendant Andrx's motion to stay this case pending resolution by the Judicial Panel on Multi-district Litigation of defendants' motion to consolidate and transfer this and other related cases. Given the potential for common and overlapping issues in many of these cases, which is confirmed by the opinions read by the court from other districts in resolving the motion to remand, the court finds that such a stay would further judicial economy and eliminate the potential for conflicting pretrial rulings were the case ultimately transferred. Therefore, defendant Andrx's motion for a stay of proceedings will be granted.

III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that:

1. Plaintiff's Motion [13] to Remand for Lack of Subject Matter Jurisdiction is DENIED.

2. Defendant Andrx Pharmaceuticals, Inc.'s Motion (12) for a Stay Pending Multidistrict Coordination is GRANTED.

3. This matter is stayed pending resolution of any Motion for Coordination and Consolidation of Pretrial Proceedings in Related Actions Pursuant to 28 U.S.C. § 1407 pending before the Judicial Panel on Multidistrict Litigation.

SO ORDERED.