**AETNA U.S. HEALTHCARE, INC., on behalf of itself and its subsidiaries and all others similarly situated, Plaintiff,**

v.

**HOECHST AKTIENGESELLSCHAFT, Hoechst Marion Roussel, Inc., and Andrx Pharmaceuticals, Inc., Defendants.**

**Civil Action No. 99–2034–KHV.**

United States District Court, D. Kansas.

June 9, 1999.

Angela K. Green, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Victoria M. Schroeder, Levy & Craig, Kansas City, MO, Victoria M. Schroeder, Levy & Craig, P.C., Kansas City, MO, for plaintiff.

Joseph M. Rebein, Joseph G. Matye, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, Gregory T. Wolf, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, for defendants Hoechst Aktiengesellschaft, Hoechst Marion Roussel, Inc.

John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendant Andrx Pharmaceuticals, Inc.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on plaintiffs' *Motion To Remand For Lack Of Subject Matter Jurisdiction* (Doc. # 16) filed March 8, 1999; *Defendant, Andrx Pharmaceuticals, Inc.'s Motion To Stay Proceedings* (Doc. # 8) filed February 19, 1999; and Hoechst Marion Roussel's *Motion To Join Andrx Pharmaceuticals Motion To Stay Proceedings* (Doc. # 13) filed March 2, 1999.[1] For reasons stated below,

---

1. Plaintiffs also bring suit against Hoechst Aktiengesellschaft, but that defendant does not argue the present motions because it asserts that it has not yet been properly served with process.

the motions of plaintiffs and Hoechst Marion Roussel are sustained, and the motion by Andrx is denied.

## Facts

Hoechst Marion Roussel, Inc. ("HMR") manufactures Cardizem CD ("Cardizem"), a prescription drug which is used to treat high blood pressure and chronic chest pain. HMR is a combination of two former companies—Marion Merrell Dow, Inc. ("MMD") and Hoechst–Roussel Pharmaceuticals, Inc. ("HRP"). MMD created Cardizem. Before it merged with MMD, HRP developed a competing product (Tiazac) in cooperation with Biovail Corporation International ("Biovail"). Andrx Pharmaceuticals, Inc. ("Andrx") was the first manufacturer to develop and receive approval from the U.S. Food & Drug Administration ("FDA") to produce a generic version of Cardizem.

In 1996, Hoechst Aktiengesellschaft ("Hoechst"), the parent company of HMR, entered into a consent order with the Federal Trade Commission ("FTC") regarding its acquisition of MMD. As part of this process, HMR divested its interest in Tiazac. The consent order required HMR to give Biovail a right to rely upon toxicology data which HMR had produced to the FDA—a so-called "right of reference." The right of reference was intended to help get Tiazac on the market by allowing Biovail to get FDA approval for Tiazac. Around November 8, 1996, however, HMR renounced its right of reference by limiting Biovail's access to information regarding drugs other than Tiazac. Because of HMR's renunciation, Biovail could not obtain FDA approval for a product that would have competed with Cardizem.

Under the Hatch–Waxman Act, 21 U.S.C. § 355, which is part of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., a manufacturer of a generic drug must certify that its product does not infringe any valid patent before the product can receive FDA approval. A patent holder can challenge the certification, however, and bring a patent infringement suit within 45 days of the notice of non-infringement. If the holder brings suit, the FDA stays the final approval of the generic product for 30 months after the date that notice was given, or until the date on which the patent litigation produces a final determination of non-infringement or patent invalidity, whichever date is earlier. See 21 U.S.C. § 355(j)(4)(B)(iii).

The Hatch–Waxman Act also provides 180 days of market exclusivity to the first generic manufacturer who applies to produce a generic product. The 180 day period begins to run on the date the applicant first sells its generic product or the date on which a final, non–appealable decision determines that the patent is invalid or not infringed——whichever is the earlier date. See 21 U.S.C. § 355(j)(5)(B)(iv).

In September of 1995, Andrx asked the FDA to approve a generic version of Cardizem. Andrx served on HMR its certification that the generic drug did not infringe any outstanding HMR patents. In January of 1996, HMR responded by filing a patent infringement action against Andrx. By bringing suit, HMR delayed final FDA approval until the end of the 30 month waiting period, which would expire July 3, 1998, or the end of the patent litigation.

On September 15, 1997, the FDA gave preliminary approval to Andrx's generic drug. On September 26, 1997, HMR entered into an agreement (the "stipulation agreement") with Andrx. Under that agreement HMR makes quarterly payments to Andrx in the amount of $10,000,-000. In exchange, Andrx agreed to dismiss its counterclaims in the patent suit, refrain from marketing its generic drug until the end of the suit, continue to diligently prosecute its claim for FDA approval, and assert its rights as first in line against other potential producers of generic drugs.

Since reaching this agreement, HMR and Andrx have not actively pursued the patent infringement suit. Andrx has not

begun selling its generic product, and its 180 day exclusivity period has yet to begin. Consequently, producers of competing generic products have been unable to compete against either HMR or Andrx.

On behalf of a class of Kansas plaintiffs who purchased Cardizem, Aetna U.S. Healthcare, Inc. ("Aetna") filed suit in state district court in Johnson County, Kansas, against Hoechst, HMR and Andrx. The suit alleges that defendants have harmed class members by preventing production of a lower-cost generic version of Cardizem. Specifically, Aetna alleges unfair competition in violation of the so-called Unfair Trade and Consumer Protection Act, K.S.A. § 50–101 et seq., for which it seeks treble damages on account of defendants' illegal trust and conspiracy in restraint of trade. Aetna also seeks disgorgement of all monies obtained as part of the conspiracy and restraint of competition and, under a theory of unjust enrichment, recovery of benefits which defendants have received from overpayments by Aetna and other members of the proposed class. Aetna also seeks a declaration that the stipulation agreement is void for violation of Kansas law regarding unfair competition. It alleges that individual class members suffered damages which amount to less than $75,000 apiece.

### Standard For Remand

■ A civil action is removable only if plaintiffs could have originally brought the action in federal court. 28 U.S.C. § 1441(a). The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction. *Frederick & Warinner v. Lundgren,* 962 F.Supp. 1580, 1582 (D.Kan.1997) (citing *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)). The rule is inflexible and without exception, and requires a court to deny its jurisdiction in all cases where such jurisdiction

does not affirmatively appear in the record. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Accordingly, the Court must strictly construe the federal removal statute. *Fajen v. Foundation Reserve Ins. Co., Inc.,* 683 F.2d 331, 333 (10th Cir.1982). "The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000].'" *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995) (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992)).

### Analysis

#### 1. Motion To Stay

■ Defendants argue that the Court should stay consideration of plaintiffs' motion for remand (and all other issues) until the Joint Panel on Multi–District Litigation ("JPMDL") has decided their motion to consolidate numerous similar actions. Defendants contend that plaintiffs will still get a chance to seek remand, after the JPMDL has made its decision.

The Court sees no reason to delay ruling on plaintiffs' motion to remand. The Court retains jurisdiction to decide the remand issue, despite defendants' motion to the JPMDL. *See* Panel Rule 1.5, 181 F.R.D. 1, 3 (1998). Defendants cite six district courts which have already addressed the jurisdictional issue, which is an important preliminary issue in this case. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

While staying the proceedings might allow a single district court to rule on the jurisdictional issue in the various cases, a stay would not affect the law that applies to the present case and little would be gained by a stay of decision on the motion to remand. The parties would still be

subject to Kansas law.[2] No great judicial economy will be realized from a delay. The parties will not save time, for they have already briefed the remand issue. The Court is well versed in both Kansas and federal law, while the transferor court would need to apply the law of different states to different claims. *See Karofsky v. Abbott Laboratories*, 921 F.Supp. 18, 21 n. 4 (D.Me.1996) (easier for federal judge in forum state to resolve issues implicating state law). For purposes of judicial economy, the jurisdictional issue should be resolved immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue. *See generally Tortola Restaurants, L.P. v. Kimberly–Clark Corp.*, 987 F.Supp. 1186, 1188 (N.D.Cal.1997).

## 2. Diversity Jurisdiction

Defendants first argue that the Court has diversity jurisdiction under 28 U.S.C. § 1332. The parties do not disagree that they are completely diverse, but they strongly dispute whether plaintiffs' claims exceed the minimum amount in controversy of $75,000.

Defendants argue that if the named class representative meets the amount in controversy requirement, the Court can exercise supplemental jurisdiction under 28 U.S.C. § 1367. The Tenth Circuit, however, held exactly opposite in *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 640 (10th Cir.1998). Consequently, each class member must satisfy the amount in controversy requirement. *Id.*

▮ Plaintiffs allege that each class member has suffered damages under $75,-000, and the Court generally cannot aggregate the claims of class members to meet the amount in controversy requirement. *See Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 336–37, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Defendants therefore argue that the Court should aggregate the claims of individual class members because they seek to "enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335, 89 S.Ct. 1053; *Zahn*, 414 U.S. at 294, 94 S.Ct. 505.

As the Court has previously stated,

> To establish a common and undivided interest, defendants must show that the claims of the putative class members derive from rights which they hold in group status. *Potrero Hill Community Action Comm. v. Housing Auth. of City and County of San Francisco*, 410 F.2d 974, 978 (9th Cir.1969); *Pierson v. Source Perrier*, S.A., 848 F.Supp. 1186, 1188 (E.D.Pa.1994). In other words, a class has a common and undivided interest "where only the class as a whole is entitled to the relief requested." *Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie S.A.*, 950 F.Supp. 250, 253 (N.D.Ill.1996). Even if plaintiffs' claims present common questions of law and fact, as they must if they are to be certified as a class, it does not necessarily mean that their rights are held in group status. *United States v. Southern Pac. Transp. Co.*, 543 F.2d 676, 683 (9th Cir.1976). Aggregation is not allowed where each class member claims an individual injury, such as a unique amount, that in theory must be proved separately. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 n. 14 (3d Cir.1993), cert. denied 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373.

**2.** While defendants argue that the jurisdictional issue concerns only federal law, Kansas law plays a vital part. A federal court determines whether it has jurisdiction by examining plaintiffs' complaint, which alleges claims specific to Kansas law. Each case from a different state involves different state-law claims. The elements or nature of a state law claim will obviously have a direct effect on the existence of federal jurisdiction, and these elements and claims vary from state to state.

*Amundson & Assocs. Art Studio, Ltd. v. National Council on Compensation Ins., Inc.*, 977 F.Supp. 1116, 1124 (D.Kan.1997).

## A. Disgorgement

■ Andrx first argues that in seeking disgorgement, plaintiffs assert a single right in which the class has a common and undivided interest. Andrx bases its argument on plaintiffs' second and third claims for relief, where plaintiffs seek disgorgement of the entire fund, i.e. "all monies" that HMR paid to Andrx under the wrongful stipulation and all monies that HMR made through its entire course of conduct. *See Amended Petition* (attached to Doc. # 1) at ¶ 129, 133, 139.

Because many plaintiffs have brought similar claims against defendants, other courts have recently had occasion to decide the issue that this case now raises. All but one have found that similar disgorgement claims constitute an undivided interest among plaintiffs. *See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F.Supp.2d 37, 39–40 (D.D.C.1999) (citing *Betnor, Inc. v. Hoechst Aktiengesellschaft*, Civ. No. C–98–3609 (MHP), *Memorandum and Order* at 10–11 (N.D.Cal. Apr. 14, 1999); *Sams v. Hoechst Aktiengesellschaft*, Civ. No. 2:98–348, *Order* at 3 (E.D.Tenn. Apr. 9, 1999); *Zuccharini v. Hoechst AG*, Civ. No. 98–74043(NGE), Transcript of Hearing at 17 (E.D.Mich. Dec. 2, 1998)); *see also Aetna/U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, Civ. No. 99–124 (DWF/AJB), *Memorandum Order & Opinion* at 6–7 (D.Minn. Apr. 29, 1999). *But see Lightner v. Hoechst Aktiengesellschaft*, Civ. No. 98–T–1057–N, *Order* (M.D.Ala. Nov. 23, 1998) (court did not address disgorgement issue); *Aetna/U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, Civ. No. 99–124 (DWF/AJB), *Report & Recommendation*, at 6–8 (D.Minn. Mar. 24, 1999) (finding disgorgement claim did not create common and undivided interest).

The Court respectfully declines to follow those holdings which have found that plaintiffs assert a common and undivided interest. The fact that plaintiffs seek disgorgement of the entire fund is not dispositive of the issue. "The proper focus should not be upon the type of relief that plaintiffs seek, but rather upon the nature and value of the rights that they have asserted." *Pierson*, 848 F.Supp. at 1188 (citing *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977) (further citation omitted)); *see also Arnold v. General Motors Corp.*, 1998 WL 827726 at *2 (N.D.Cal. Nov 18, 1998). In the only published decision which addresses this issue, *Aetna*, 1999 WL 289282, the District of Columbia court determined that plaintiffs' claim for disgorgement involved a common and undivided interest because plaintiffs requested disgorgement of the entire unjust enrichment to defendants—the stipulation funds. *Id.* at *3. The court focused on the fact that plaintiffs' disgorgement claim only alleged wrongful conduct by defendants; the claim did not tie this conduct to individual legal rights. *Id.*

In this case, Aetna does not expressly identify the source or the nature of the individual rights that would justify its prayer for disgorgement. This fact does not necessarily mean, however, that plaintiffs' claims are necessarily based on a collective right. It could mean that plaintiffs do not have rights which entitle them to disgorgement or that plaintiffs have simply failed to properly identify those rights which they possess. Here, plaintiffs' second and third claims are completely silent as to what gives them any rights to disgorgement of the entire claim. The D.C. court apparently had the view that defendants' unjust conduct gave plaintiffs the right to bring suit for disgorgement without any injury to plaintiffs. To receive equitable relief, however, it is not enough that plaintiffs simply show inequitable conduct by defendants.

■ "An action for disgorgement … is a remedy only for restitution ….

Restitution is limited to 'restoring the status quo and ordering the return of that which rightfully belongs'" to plaintiffs. *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 402, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332 (1946)); *see also Hateley v. SEC,* 8 F.3d 653, 655 (9th Cir.1993) (citing *SEC v. Wang,* 944 F.2d 80, 85 (2d Cir. 1991)) (disgorgement is equitable remedy for unjust enrichment). To prevail on a claim of unjust enrichment, plaintiffs must have conferred a benefit upon defendant. *Haz–Mat Response, Inc. v. Certified Waste Servs. Ltd.,* 259 Kan. 166, 177, 910 P.2d 839 (1996) (quoting *J.W. Thompson Co. v. Welles Prods. Corp.,* 243 Kan. 503, 512, 758 P.2d 738 [1988] ).

■ In short, plaintiffs must show some connection to the inequitable conduct which they allege. In this case, that conduct is demonstrated by the allegation that each individual class member made overpayments to HMR.[3]

■ While defendants argue that the class has an undivided interest in all of the stipulation monies, they have not credibly demonstrated that their position is correct. Class members did not make overpayments as a group; each member made separate, distinct and individual payments to HMR. Each member can only recover to the extent of his or her overpayment. *See Haz–Mat,* 259 Kan. at 177, 910 P.2d at 847. "Absent unusual circumstances, unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class. Instead, each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff." *Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260, 1268 (N.D.Ala.1998). "To the extent possible, disgorged funds should be apportioned among the individual claimants rather than being treated as a single collective right in which putative class members have an undivided interest." *Dixon v. Ford Motor Credit Co.,* 1998 WL 440304 at *3 (E.D.La. Jul 31, 1998).

Moreover, proration of the funds appears to be feasible in this case. "While the damages are admittedly based on the defendants' profits, and not the plaintiffs' harm, each recovery is an individual right and constitutes an individual interest." *Id.*

In short, simply because plaintiffs request the remedy of "all monies" does not establish that the right which they seek to enforce is a collective right. The underlying right which each plaintiff seeks to enforce is his or her individual right to collect any overpayment to defendants. Class members made these payments individually, not as a group. Prior to litigation, no group status or common interest was involved. *See Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1430 (2d Cir.1997). Each consumer could have brought a separate and individual claim to recover the benefits which he or she unjustly conferred upon defendants; relief was not and is not limited to the class as a whole. *See id.; Amundson,* 977 F.Supp. at 1124.[4]

---

**3.** The Court recognizes that although it equates the disgorgement and unjust enrichment claims, plaintiffs bring separate claims for disgorgement and unjust enrichment. The existence of an unjust enrichment claim does not establish, however, that plaintiffs' disgorgement claim is based on a group right; the claims simply appear to be duplicative in this case.

The two claims are slightly different, in that a disgorgement claim can seek the return of an agent's secret profits from a principal's business. *See Henderson v. Hassur,* 225 Kan. 678, 688, 594 P.2d 650, 659 (1979). In such

a case, plaintiffs have not actually conferred the benefit which defendants received, so an unjust enrichment claim is difficult. Plaintiffs may be entitled to disgorgement, however, because they were injured by defendants' failure to pass the benefit on to plaintiffs. In this case, however, this difference between disgorgement and unjust enrichment disappears, because the injury is the same for both claims—the individual overpayments for Cardizem by class members.

**4.** The D.C. court attempted to distinguish *Gilman's* refusal to find that a disgorgement claim was undivided. *See Aetna* 1999 WL

The claims of the putative class members do not derive from rights which they hold in group status. *See Amundson,* 977 F.Supp. at 1124. Finally, because members only have the right to recover their own overpayments, one plaintiffs share is not increased if another plaintiff cannot or does not bring suit. *See Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983) (identifying characteristic of common and undivided interest is that if one plaintiff cannot or does not collect his share, shares of remaining plaintiffs are increased). In seeking disgorgement, plaintiffs do not unite to enforce "a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. 1053.

## B. Other Relief

Plaintiffs seek injunctive relief which invalidates the stipulation agreement and enjoins HMR's renunciation of the letter of reference to Biovail. Andrx argues that the Court should find that the amount in controversy requirement is satisfied, by considering the cost of injunctive relief to defendants, instead of its value to each class member.

■■ The Court can rely on either the cost of injunctive relief to defendant or the value of injunctive relief to plaintiffs. *See Amundson,* 977 F.Supp. at 1124 (citing *Justice v. Atchison, Topeka & Santa Fe. Ry. Co.,* 927 F.2d 503 (10th Cir.1991)). In deciding whether the amount in controversy should be valued from the standpoint of plaintiffs or defendants, the Court begins with *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597 (10th Cir.1970), which held that where class members have separate and distinct claims for injunctive relief, those claims may not be aggregated to meet the jurisdictional amount and "it would be improper to look to [defendants'] total detriment" in determining the amount in controversy. *Id.* at 599 (citing *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). "The threshold question is aggregation, and it must be resolved affirmatively before total detriment can be considered." *Id.* at 599.

■■ Other than noting that plaintiffs seek across-the-board injunctive relief which is not particular to specific class members, Andrx does not demonstrate that the claims of individual class members are collective in nature. Andrx apparently views the injunctive relief as the common and undivided right of the class members. As noted above, however, we must look at the nature of the right asserted, not the nature of the relief requested. *Pierson,* 848 F.Supp. at 1188. Plaintiffs base their claims for injunctive relief upon individual overpayments by class members. No group right or interest forms the basis for the requested injunctive relief. Class members did not possess rights in common before they filed suit, and they could have sued individually to secure the injunctive relief which they request. *Amundson,* 977 F.Supp. at 1124.

Because class members do not have a common interest, the Court must distribute the litigation costs among them in determining the amount in controversy. *See Lonnquist,* 421 F.2d at 599; *Amundson,* 977 F.Supp. at 1125. Andrx asserts that the requested injunctive relief will cost "tens of millions of dollars." See Doc. # 29 at 18; Exhibit A (attached to Doc. # 29) at 3. Plaintiffs' complaint alleges a class, however, which numbers in the

289282 at *5. The *Aetna* court noted that Gilman required the vindication of individual rights, while plaintiffs' claim in Aetna did not. *Id.* Defendants in *Gilman* also argued, however, that plaintiffs' disgorgement claim sought "all payment for order flow, whether attributable to a particular transaction or not." *Gilman,* 104 F.3d at 1425 n. 8. The Gilman court rejected this argument, noting that even accepting defendant's reading of the complaint, "each plaintiff will only be entitled to reimbursement for his or her own claim" based on the benefit that plaintiffs conferred. *Id.* Because of this, "plaintiffs' claims still cannot be aggregated because the class members have no common and undivided interest in the 'fund' of damages that they might receive." *Id.* at 1426.

"many thousands." *Amended Petition* (attached to Doc. # 1) at 7–8. While Andrx's evidence of defendants' costs would be sufficient to exceed the statutory minimum if the Court could aggregate the claims of class members' claims, it cannot do so in this case. The evidence is too vague and hypothetical to establish that the claims of each class member exceed the statutory minimum if the Court were to divide defendants' cost among all class members. *See Amundson,* 977 F.Supp. at 1125. Andrx fails to meet its burden of proving that the injunctive relief provides damages exceeding the minimum amount in controversy.[5]

### 3. Federal Question Jurisdiction

Another court in this district recently summarized the "well-pleaded complaint" rule, which governs our analysis of federal question jurisdiction, as follows:

Federal district courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1441(b). The Supreme [C]ourt has long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *see also Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). A defense is not part of a plaintiff's properly pleaded statement of his or her claim. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ("To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."). Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).

*Kansas v. Home Cable Inc.,* 35 F.Supp.2d 783, 786 (D.Kan.1998).

### A. Noerr–Pennington Doctrine

■ Plaintiffs allege that HMR filed frivolous patent infringement actions for the sole purpose of delaying and preventing the entry of competing products into the marketplace. Defendants argue that the Noerr–Pennington doctrine provides federal question jurisdiction over this issue. "The Noerr–Pennington doctrine is based upon the protections of the First Amendment and exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition." *Zimomra v. Alamo Rent–A–Car, Inc.,* 111 F.3d 1495, 1503 (10th Cir.1997) (citations omitted). Plaintiffs' complaint alleges that the patent litigation between HMR and Andrx is designed only to harm competitors, and that it therefore falls within the "sham exception" to the Noerr–Pennington

---

**5.** Arguments which are based on attorneys' fees and treble damages fail for exactly the same reason. When plaintiffs assert no common claim, neither amount can be aggregated and the evidence is too ambiguous, in any event, to establish that the award to each class member would exceed $75,000. *See Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir.1982) (aggregation of attorneys' fees not allowed to satisfy jurisdictional amount); *Lauchheimer v. Gulf Oil,* 6 F.Supp.2d 339, 348 (D.N.J.1998) (same); *Crosby v. America Online, Inc.,* 967 F.Supp. 257, 262 (N.D.Ohio 1997) (same); *Amundson,* 977 F.Supp. at 1123 (refusing to aggregate treble damages).

doctrine. *See Classic Communications, Inc. v. Rural Tel. Serv. Co., Inc.,* 956 F.Supp. 910, 919 (D.Kan.1997).

▪ Plaintiffs argue that the Noerr–Pennington doctrine is a defense and that it cannot establish federal question jurisdiction under the well pleaded complaint rule. HMR argues that the Noerr–Pennington doctrine is not really an affirmative defense because plaintiffs bear the burden of proving that defendants' conduct falls within an exception to the doctrine. *See McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1558 n. 9 (11th Cir.1992).

▪ The Noerr–Pennington doctrine is more than "merely an affirmative defense" because once defendants assert it, plaintiffs bear the burden of proving that it does not apply. *See id.* While a defendant can attack plaintiffs' complaint for failing to allege an exception to the doctrine, see *Classic Communications, Inc.,* 956 F.Supp. at 919, such an exception is not a necessary element of plaintiffs' claim. Rather, it is a response to an anticipated defense. The doctrine is a defense which, once asserted by defendants, plaintiffs must defeat. *See We, Inc. v. City of Philadelphia,* 174 F.3d 322, 328 (3d Cir. 1999) (doctrine provides defense from liability); *Cheminor Drugs. Ltd. v. Ethyl Corp.,* 168 F.3d 119, 124 n. 12 (3d Cir. 1999); *Practice Management Info. Corp. v. American Med. Ass'n,* 121 F.3d 516, 521 (9th Cir.1997). Because the Court finds that the Noerr–Pennington doctrine constitutes a defense, it cannot form the basis for federal question jurisdiction in this case.[6]

## B. Federal Patent Law

▪ "Even though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state

law requires resolution of a substantial question of federal law." *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997) (quoting *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848; *see also id.,* at 27–28, 103 S.Ct. at 2856 (case arises under federal law when "federal law creates the cause of action or ... the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (federal question exists when a "right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action")).

▪ HMR argues that plaintiffs' complaint raises substantial questions regarding federal patent law. Plaintiffs, however, do not seek to litigate the validity of HMR patents. Rather, they allege that HMR violated Kansas law by instigating patent litigation for the sole purpose of delaying and preventing competition. Plaintiffs' right to relief does not "necessarily depend[ ] on resolution of a substantial question of federal law," and federal law is not "a necessary element of one of the well-pleaded ... claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. 2841). "If 'on the face of a well-pleaded complaint there are ... reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiffs] may or may not be entitled to the relief [they] seek[ ],' ... then the claim does not 'arise under' those laws." *Christianson,* 486 U.S. at 810, 108 S.Ct. 2166 (quoting *Franchise Tax Board,* 463 U.S. at 26, n. 29, 103 S.Ct. at 2855, n. 9).

Plaintiffs' claims do not depend on whether the HMR patents are valid; they

---

**6.** Even if the Noerr–Pennington doctrine was not a defense, it would not be an essential element of plaintiffs' claims. As the Court

discusses below, plaintiffs' claims of unfair competition do not require the Court to consider plaintiffs' patent allegations.

allege only that HMR had an impure heart when it filed suit. Moreover, regardless whether the HMR patent is valid, plaintiffs allege that defendants committed other acts of unfair competition—such as the stipulation agreement. Any discussion of patent law is merely tangential to plaintiffs' claim that HMR had an ill motive which resulted in unfair competition. While federal law may be implicated in an examination of HMR's motives, it is hardly a substantial or necessary part of plaintiffs' claim. See *Gaines–Tabb v. Mid–Kansas Co-op. Ass'n*, 980 F.Supp. 1424, 1428 (D.Kan. 1997) (fact that state claim may require reference to federal law not sufficient).

## C. The FTC Order

■ Plaintiffs allege that HMR violated an FTC consent order by renouncing a right of reference which it submitted to the FDA. HMR argues that the Court must consider whether HMR violated the FTC order, which is a federal question. Plaintiffs' substantive claim, however, is that HMR violated state unfair competition laws, not that HMR violated the FTC order. The allegations regarding the FTC order merely evidence plaintiffs' state law claim. As plaintiffs note, even if HMR did not violate the FTC order, it could still violate state law. In a companion case, e Northern District of California has likewise found that allegations of unfair competition under state law seek to litigate HMR's conduct, not the FTC order. See *Betnor, Inc. v. Hoechst Aktiengesellschaft*, Civ. No. C–98–3609 (MHP), *Memorandum and Order* at 6–7 (N.D.Cal. Apr. 14, 1999). As with HMR's patent law argument, no substantial federal question regarding the FTC order exists in this case, because plaintiffs' claims do not *require* any interpretation of the FTC order. The FTC order is but one act which allegedly evidences unfair competition. Plaintiffs can succeed on their unfair competition claim regardless of any consideration of the FTC order.

## D. Hatch–Waxman Act

■ Defendants argue that plaintiffs' state law claims are wholly preempted by the Hatch–Waxman Act, 21 U.S.C. § 355. The Supremacy Clause, U.S. Const., Art. VI, cl. 2, preempts state law in three circumstances. First, Congress can define explicitly the extent to which its enactments preempt state law. See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Second, state law is preempted to the extent that it actually conflicts with federal law. See *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Third, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the federal government to occupy exclusively. See *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); *see, also Home Cable*, 35 F.Supp.2d 783, 787 (D.Kan.1998).

■ Preemption is a question of congressional intent. See *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230, 67 S.Ct. 1146. Defendants argue that the Hatch–Waxman Act is so pervasive and complete that it wholly preempts state laws governing their conduct here.

■ Defendants' argument suffers from a fatal flaw. Before the Court can find complete preemption, defendants must show that "federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby mani-

festing Congress's intent to permit removal." *Schmeling v. NORDAM,* 97 F.3d 1336, 1342 (10th Cir.1996). "[A] federal cause of action is a prerequisite to removal under the complete preemption doctrine." *id.* 1343. Defendants do not cite any federal remedy under the Hatch–Waxman Act which plaintiffs could have utilized in this case.

Defendants' argument appears better suited for the second method of proving preemption—a conflict between state and federal law. Defendants have not expressly argued this issue. The Court nonetheless discerns no conflict that would be sufficient to preempt state antitrust laws. Plaintiffs' complaint does not allege that defendants' rights under Hatch–Waxman violate Kansas unfair competition laws. Rather, plaintiffs allege that defendants' course of conduct as a whole amounted to unfair competition. This course of conduct included actions under the Hatch–Waxman Act, but more importantly, it included acts such as the stipulation agreement, which were not covered by the Hatch–Waxman Act.

The record in this case does not suggest that it is "impossible for a private party to comply with both state and federal requirements." *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (quoting *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). Defendants could have exercised their rights under the Hatch–Waxman Act and yet avoided the other conduct which plaintiffs challenge, such as the stipulation agreement. Defendants also fail to show that Kansas unfair competition laws "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner,* 514 U.S. at 287, 115 S.Ct. 1483 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). While Congress intended to give defendants some rights and did not expressly prohibit such actions as the stipulation agreement, defendants cannot persuasively argue that Congress intended to permit their stipulation agreement when it enacted the Hatch–Waxman Act.

Similarly, defendants have not identified a substantial federal question which must be resolved under Hatch–Waxman. While plaintiffs allege that defendants abused their rights under the Act, plaintiffs' claims also focus on defendants' conduct outside of the Act—the stipulation agreement. To show unfair competition, plaintiffs do not need to show that defendants violated the Act; plaintiffs need only show that defendants acted to restrict competition. While this showing might include proof that defendants violated the Act, that fact alone is insufficient to confer federal question jurisdiction. See Gaines–Tabb, 980 F.Supp. at 1428. Plaintiffs can just as easily show that defendants fully complied with the Act, yet unfairly restricted competition with their conduct outside of the Act. Defendants cite no portion of the Act which addresses their stipulation agreement, and while consideration of the agreement will reference defendants' rights under the Act, it will not require an interpretation or application of the Act. No substantial issue of federal law arises under the Hatch–Waxman Act.

In sum, the Court finds no basis for federal jurisdiction, under either diversity jurisdiction or federal question jurisdiction. Removal is therefore improper and the Court must remand.

## 4. Motion For Fees

▬ Plaintiffs seek an award of fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is therefore within the Court's discretion. *See Suder v. Blue Circle, Inc.,* 116 F.3d 1351, 1352 (10th Cir.1997); *Amundson,* 977 F.Supp. at 1128. Because the Court has found that removal was improper, it has the discretion to award fees. *Suder,* 116 F.3d at 1352. The Court

1056

declines, however, to award fees in this case. Defendants made a good faith argument that has met considerable success in other federal districts. While the Court finds that removal was improper in this case, it also finds that an award of fees would be inappropriate.

**IT IS THEREFORE ORDERED** that the *Motion To Join Andrx Pharmaceuticals Motion To Stay Proceedings* of Hoechst Marion Roussel (Doc. #13) filed March 2, 1999 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Defendant, Andrx Pharmaceuticals, Inc.'s Motion To Stay Proceedings* (Doc. #8) filed February 19, 1999 be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' *Motion To Remand For Lack Of Subject Matter Jurisdiction* (Doc. #16) filed March 8, 1999 be and hereby is SUSTAINED in part, in that the case is hereby remanded to the District Court of Johnson County, Kansas. Plaintiffs' request for fees is hereby **DENIED.**