**Barbara A. MEYERS, Plaintiff,**

v.

**BAYER AG, Bayer Corporation, Barr Laboratories, Rugby Group, Inc., Watson Pharmaceuticals, Inc., and Hoechst Marion Roussel, Inc. Defendants.**

No. 00–C–1582.

United States District Court,
E.D. Wisconsin.

May 18, 2001.

John C. Cabaniss, Law Office of John C. Cabaniss, Milwaukee, WI, Joseph P. Danis, Carey & Danis, St. Louis, MO, Joseph R. Saveri, Lieff Cabraser Heimann & Bernstein, San Francisco, CA, for Barbara A. Meyers, plaintiffs.

Fred H. Bartlit, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, Phillip A. Proger, Jones Day Reavis & Pogue, Karen N. Walker, Kirkland & Ellis, Jonathan L. Greenblatt, Shearman & Sterling, Washington, DC, Stephen P. Hurley, Kristine A. Edwards, Hurley Burish & Milliken, Madison, David E. Everson, Stinson Mag & Fizzell, Kansas City, MO, for Bayer AG, Bayer Corporation, Barr Laboratories, Rugby Group Inc., Watson Pharmaceuticals Inc., Hoechst Marion Roussel Inc., defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Barbara A. Meyers filed this action in state court against defendants Bayer AG and other corporations alleging claims under Wisconsin antitrust and deceptive trade practice laws on behalf of herself and other Wisconsin indirect purchasers of the patented drug ciprofloxacin hydrochloride ("Cipro"). Cipro is a widely used antibiotic; according to plaintiff, it has been the best selling antibiotic in the world for eight consecutive years. Plaintiff alleges that defendant Bayer, which developed and patented Cipro, violated state law by agreeing to pay the other defendants to refrain from marketing a generic Cipro equivalent.[1]

Defendants timely removed the case to this court alleging that federal question jurisdiction exists pursuant to 28 U.S.C. §§ 1331 & 1338, because a substantial question of federal patent law must be resolved to decide an essential element of plaintiff's state law antitrust claim. Spe-

---

1. This action is thus part of what a recent news article described as "growing scrutiny of generic drugs and the relationships between generic drug manufacturers and large, brand-name pharmaceutical companies." Liz Kowalczyk, *Consumer Group Sues over Price of Cancer Drug,* Boston Globe, May 10, 2001, at A1.

cifically, defendants contend that plaintiff could prove that she suffered antitrust injury only by demonstrating that Bayer's Cipro patent is invalid. Alternatively, defendants assert the existence of diversity jurisdiction under 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy is alleged to exceed $75,000. Plaintiff disputes the existence of either federal question or diversity jurisdiction and moves that the case be remanded to state court.

Defendants, in turn, move for a stay of all further proceedings in the case, including the motion to remand, pending a determination by the Judicial Panel on Multidistrict Litigation ("JPML") as to whether to transfer the case to the Eastern District of New York pursuant to 28 U.S.C. § 1407. The present case is one of more than thirty lawsuits filed in state and federal courts in the United States in recent months raising similar or identical claims about Cipro. On December 11, 2000, the JPML ordered six of the cases consolidated and transferred to the Eastern District of New York. *In re Ciprofloxacin Hydrocholoride Antitrust Litig.,* MDL Docket No. 1383 [hereinafter "the MDL proceeding"], 2000 U.S. Dist. LEXIS 18188 (J.P.M.L. Dec. 11, 2000). Since then, twenty-one additional cases have been transferred or conditionally transferred to the MDL proceeding, and on January 23, 2001 the JPML conditionally ordered this case transferred to the MDL proceeding. *MDL Proceeding,* 2001 U.S. Dist. LEXIS 2415 (J.P.M.L. Jan. 23, 2001.) Plaintiff has opposed the conditional transfer order, and a hearing on that opposition is scheduled to take place before the JPML May 31, 2001 in Washington, D.C.

## II. DISCUSSION

The MDL system provides for the transfer of actions with one or more common questions of fact to a single district for coordinated pretrial proceedings. 28 U.S.C. § 1407(a). Congress authorized the JPML to order transfers only after determining that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions," *id.,* and with the expectation that transfers will be ordered "only where significant economy and efficiency in judicial administration may be obtained," H.R.Rep. No. 90–1130 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900.

A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions. Rules of Procedure of the JPML R. 1.5; *Gen. Elec. Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir.1979). Plaintiff argues that this court should address her motion to remand before addressing defendants' motion for a stay and makes two arguments in support of this contention: (1) that federal courts are obligated to determine whether they have jurisdiction before ruling on any other motions, therefore, I must address the remand motion before the stay motion; (2) that even if I am not required to give primacy to the motion to remand I should nevertheless do so for reasons of policy. I now turn to these arguments.

### A. Judicial Power

In support of her contention that I must address the remand issue first, plaintiff cites the "bedrock principle of federal law" (Pl.'s Mem. in Opp. to Defs.' Mot. to Stay at 8), expressed in *Ex Parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868): "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." In

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 93–101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), the Supreme Court emphasized that a court may not resolve contested questions of law on the assumption that jurisdiction exists. A federal court may not proceed to the merits of a case without first verifying that it has jurisdiction under Article III of the Constitution. *Id.* at 101–02, 118 S.Ct. 1003.

To say that I am powerless to take any action at all before verifying my jurisdiction, however, slightly overstates the matter. For example, it is a "primordial element of our jurisprudence" that federal courts have jurisdiction to determine whether they have subject matter jurisdiction. *Shannon v. Shannon,* 965 F.2d 542, 545 (7th Cir.1992). What *Steel Co.* forbids is a court's assuming law-declaring power by deciding the merits of a case in the absence of verified subject matter jurisdiction. Scott C. Idleman, *The Demise of Hypothetical Jurisdiction in the Federal Courts,* 52 Vand. L.Rev. 235, 333 & n. 409 (1999) (quoting *In Re Minister Papandreou,* 139 F.3d 247, 255 (D.C.Cir.1998)). However, granting a stay is not adjudicating the merits of a case. Neither *McCardle* nor *Steel Co.* requires resolving jurisdictional matters before considering whether to grant a stay motion.[2]

Further, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.). *See also Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Finally, in addition to my inherent power to stay the case, Congress has granted me statutory authority to issue a stay, because 28 U.S.C. § 1407 authorizes the JPML to order a case transferred despite the pendency of a jurisdictional objection. *In re Ivy,* 901 F.2d 7, 9 (2nd Cir.1990).

**B. Methodology**

Analyzing the question from the standpoint of judicial power does not resolve the question of whether the remand and stay motions should be addressed together or separately, and if separately, in what order. Neither does the *Manual for Complex Litigation (Third)* 's observation that the pendency of a transfer motion "should not automatically ... postpone rulings on pending motions." § 31.131 at 252 (1995). Courts have divided in other cases, sometimes granting motions to remand and sometimes deferring consideration of such motions to the JPML by granting stays. *Compare Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042, 1055 (D.Kan.1999) (denying motion to stay and considering and granting motion to remand), *Tortola Rests., L.P. v. Kimberly–Clark Corp.,* 987 F.Supp. 1186, 1188–89 (N.D.Cal.1997) (same), *and Villarreal v. Chrysler Corp.,* 1996 WL 116832

---

**2.** I thus decline to follow the approach of *Farkas v. Bridgestone/Firestone, Inc.,* 113 F.Supp.2d 1107, 1115 n. 8 (W.D.Ky.2000) (holding that "the jurisdictional issue *must* be resolved before deciding whether to stay or transfer the case to the MDL panel") (emphasis added), *Lloyd v. Cabell Huntington Hosp., Inc.,* 58 F.Supp.2d 694, 696 (S.D.W.Va.1999) ("This Court cannot, however, stay proceedings in an action over which it lacks jurisdic-

tion"), and *Stern v. Mut. Life Ins. Co. of N.Y.,* 968 F.Supp. 637 (N.D.Ala.1997) ("It is incumbent upon a court whose subject matter jurisdiction is questioned to make a *determination* as to whether it has, or does not have, jurisdiction over the action. This determination involves no issues that the putative transferee court in the multi-district action would be uniquely qualified to address.") (emphasis added).

(N.D.Cal. Mar.11, 1996) (same), *with Weinke v. Microsoft Corp.*, 84 F.Supp.2d 989, 990 (E.D.Wis.2000) (granting stay and deferring motion to remand to MDL), and *Tench v. Jackson Nat'l Life Ins. Co.*, No. 99 C 5182, 1999 WL 1044923 (N.D.Ill. Nov. 12, 1999) (same). None of these decisions, however, offer much guidance concerning how to proceed to address the two motions.

■ My view is that a court's first step should be to make a preliminary assessment of the jurisdictional issue. Although *Landis* might be read to empower me to stay the case without making any effort to verify jurisdiction, I am, nevertheless, reluctant to do so. First, *Steel Co.* emphasized the constitutional importance of the "jurisdiction first" principle. Second, 28 U.S.C. § 1447(c) directs that "[i]f at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added). This section dictates that a judge should give at least some consideration to a remand motion. The third reason is judicial economy. "If the limited review reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the [transferor] court ... should dismiss the case rather than waste the time of another court." *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir.1999) (discussing transfer of habeas corpus cases rather than multidistrict civil litigation).

The fourth reason is that even though a stay does·not directly implicate the merits of a case, it undeniably has important effects on the litigation. A plaintiff may carefully craft a state court complaint in order to avoid litigating the matter in federal court. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir.2000) ("plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum"). Justice Holmes observed that "the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913).

Removing a case to federal court has long been known to impose a burden upon plaintiffs; at a minimum, it requires the plaintiff to present its arguments for remand in a foreign forum, often at a considerable distance from the local county courthouse and before a judge who might be less sympathetic to the plaintiff's cause than a judge who is local (and often, elected). Edward A. Purcell, Jr., *Litigation and Inequality: Federal Diversity Jurisdiction in Industrial America, 1870–1958* 25, 52–53 (1992). Concerns about being haled into distant courts are particularly implicated by the MDL system. Not only is the judge unknown, but the proceeding is all but certain to be even farther from home, and plaintiff's chosen counsel may have little power to shape the course of the litigation. Earle F. Kyle, IV, *The Mechanics of Motion Practice Before the Judicial Panel on Multidistrict Litigation*, 175 F.R.D. 589, 590 (1998) ("the Panel can seize control of your case, thrust you into someone else's litigation halfway across the country, and relegate you to '100th chair' status in an already over-lawyered mass litigation"); Mike Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag–Along Orders Prior to a Determination of Remand: Procedural and Substantive Problem or Effective Judicial Public Policy?*, 23 Memphis St. U.L.Rev. 841, 843 (1993) (observing that a plaintiff may be "swiftly transferred from his state court to his home federal district and then whisked to an unknown, unpredictable United States district judge").

This case is an example in point. Plaintiff originally filed her action in Milwaukee County Circuit Court and defendants removed to the U.S. District Court for the Eastern District of Wisconsin (which in this instance is also located in Milwaukee); but plaintiff's opposition to the JPML's conditional transfer order will be heard in Washington, D.C., and if a final transfer order is entered, plaintiff will find herself litigating in the U.S. District Court for the Eastern District of New York.

For the four reasons discussed, then, a court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.

■ If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. The only reason to permit the transferee court to decide the jurisdictional issue would be to further judicial economy and consistency. H.R.Rep. No. 90–1190. If the jurisdictional issue in the particular case is different from those in the other cases subject or potentially subject to MDL jurisdiction, these values do not come into play. The *Manual for Complex Litigation (Third)* suggests that the transferee court should resolve motions to dismiss or to remand "raising issues unique to the particular case" before the JPML decides the motion to transfer. § 31.131 at 252. Thus, in *Kohl v. American Home Products Corp.,* 78 F.Supp.2d 885, 888 (W.D.Ark. 1999), the court observed that the remand issue turned on "a unique question wholly dependent on the law of the State of Arkansas" and therefore proceeded to decide the remand motion, and in *Aetna U.S.*

*Healthcare,* 54 F.Supp.2d at 1048 n. 2, the court addressed the remand issue in part because "Kansas law plays a vital part," while in *Falgoust v. Microsoft Corp.,* No. Civ. A. 00–0779, 2000 WL 462919, at *1 (E.D.La. Apr.19, 2000), the court declined to decide the remand issue in part because it was similar or identical to remand motions raised in other cases subject to transfer.

Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay. But considering the motion to stay does not mandate that a stay should be granted; the factors to be considered include (1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997). If the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred, judicial economy would be served by issuing the stay. *Boudreaux v. Metro. Life Ins. Co.,* Civ. A. No. 95–138, 1995 WL 83788, at *2 (E.D.La. Feb.24, 1995). Accordingly, if the stay motion is reached at all, it will generally require weighing the judicial economy gained and hardship to the moving party avoided by granting the stay against the harm to the non-moving party. Even if a stay is warranted, it should last only for a reasonable duration. *Landis,* 299 U.S. at 255, 57 S.Ct. 163.

## C. Application of Methodology to Facts

### 1. Preliminary Assessment of Jurisdictional Issue

As discussed above, I first make a preliminary assessment of the jurisdictional issue. A case may be removed to federal

court only if it could initially have been filed in federal court. 28 U.S.C. § 1441(a). Defendants assert both diversity and federal question jurisdiction.

### a. Diversity Jurisdiction

■ Diversity jurisdiction requires complete diversity of citizenship and a certain amount in controversy, currently $75,000. 28 U.S.C. § 1332(a). As the party alleging diversity jurisdiction, defendants bear the burden of proof. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997). When diversity jurisdiction is the basis for removing a case to federal court, the removing party must offer evidence which proves to a reasonable probability that such jurisdiction exists. *Id.*

A class action satisfies the amount in controversy requirement only if at least one class member's claim satisfies the jurisdictional minimum. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997). Defendants assert that plaintiff satisfies this requirement because, if she prevails, she will be entitled to attorneys fees, which will surely exceed $75,000 by the time litigation is complete.

Whether the jurisdictional amount is satisfied is determined as of the date that the complaint is filed; what happens later is irrelevant. *St. Paul Mercury Indem. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir.1997). A plaintiff cannot gain standing to litigate a substantive issue in federal court by bringing suit for the cost of bringing suit. *Steel Co.*, 523 U.S. at 107, 118 S.Ct. 1003. For these reasons, even if it were legally certain (the standard applied when suit is initially filed in federal court, rather than removed) that the attorneys fees necessary for plaintiff to prevail would push her recovery over the jurisdictional amount, "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed." *Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir.1998).[3] It is thus clear that expected future attorneys fees cannot satisfy the jurisdictional amount.

■ Plaintiff alleges that her and other class members' damages are not in excess of $75,000. Defendants correctly observe that plaintiff demands statutory treble antitrust damages, which makes the relevant damages threshold $25,000. *W. Bend Elevator, Inc. v. Rhone–Poulenc S.A.*, 140 F.Supp.2d 963 (E.D.Wis.2000). Nonetheless, there is no information in the record about how much Cipro costs, much less whether any given class member might have paid more than $25,000 in antitrust overcharges since 1997, the start of the class period. Defendants thus have not satisfied their burden under *Chase*, 110 F.3d at 427, to prove the jurisdictional amount by a reasonable probability. I therefore find that this court lacks diversity jurisdiction.

### b. Federal Question Jurisdiction

■ Federal question jurisdiction exists where the action arises under federal law.

---

**3.** Dicta in *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1078 (7th Cir.1986), stated that the amount in controversy should include "the attorney's fees that [a plaintiff] might reasonably expect to get reimbursed if he won." However, *Sarnoff* did not address future versus pre-filing fees, while the topic is part of *Gardynski–Leschuck*'s holding and is discussed for two pages. 142 F.3d at 958–59. Other district courts have relied upon *Gardynski–Leschuck* for its holding, *Godfrey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 98 C 2956, 1999 WL 104245, at *1 (N.D.Ill. Feb. 24, 1999) (Plunkett, J.); *McNair v. McGrath Lexus–Colosimo, Ltd.*, 11 F.Supp.2d 990, 993 & n. 5 (N.D.Ill.1998) (Bucklo, J.).

28 U.S.C. § 1331. According to the Supreme Court:

> Jurisdiction extends only to those cases in which a well pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relieve necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well pleaded claims.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). A claim "arises under" federal law even though the claim was created by state statute where the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Plaintiff's complaint alleges causes of action based solely upon state law, rather than created by federal patent law. Thus, analysis proceeds under *Christianson*'s second prong.

The rule is that a claim arises under federal law only if federal law is a necessary element of one of the well-pleaded claims of the complaint. *Christianson*, 486 U.S. at 808, 108 S.Ct. 2166 (quoting *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841). The Court stated that what matters is whether federal law is necessary to a "claim" rather than to a "theory": "The well-pleaded complaint rule, however, focuses on claims, not theories, and just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire [state law] claim 'arises under' patent law." *Id.* at 811, 108 S.Ct. 2166 (citations omitted).

Unfortunately, it is not an easy matter to apply this rule. As one commentator has observed:

> In summary, by its *Christianson* decision, the Court reaffirmed the viability of the well-pleaded complaint rule and its collateral principles as applied to patent jurisdiction: patent jurisdiction exists only if patent law creates or is a necessary element of the action; federal jurisdiction cannot derive from a defense raised in the answer or anticipated in the complaint; and a mere theory of liability requiring construction or application of the patent laws does not establish patent jurisdiction, unless that patent law theory is an essential element of the plaintiff's state law claim. *For all that, however, the Court left unclear how to determine whether a specific case in fact arises under the patent laws.*

Amy B. Cohen, *"Arising Under" Jurisdiction and the Copyright Laws*, 44 Hastings L.J. 337, 360 (1993) (emphasis added).

Nor does looking to other courts that have applied *Christianson* make it easier to tell when a challenge to a patent's validity is implicated by a state law claim, rather than merely by a theory that supports a state law claim. In the only other reported decision to date addressing this aspect of the Cipro litigation, *Altman v. Bayer Corp.*, 125 F.Supp.2d 666, 673 (S.D.N.Y.2000) (McMahon, J.), the court found that injury-in-fact was an undeniable element of the antitrust claim in *Christianson*,[4] but was compelled to assume that the Supreme Court there concluded (albeit *sub silentio*) that even if the invalidity of the defendant's patent were essential to the injury-in-fact element of the plaintiffs' state law claim, that alone was not sufficient to make the claim arise un-

---

4. Indeed, the Supreme Court "assume[d] without deciding that the invalidity of Colt's patents is an essential element of the forego-   ing monopolization theory." *Christianson*, 486 U.S. at 811, 108 S.Ct. 2166.

der federal patent laws. For the same reason, the court concluded, even though the plaintiff in *Altman* would have to prove the invalidity of Bayer's Cipro patent to establish the injury-in-fact element of her state law claims, that was not sufficient to make her claims arise under federal patent law. *Id.* Accordingly, the case was remanded to state court.

I agree with much of Judge McMahon's reasoning. Defendants, however, draw upon *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed.Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed.Cir.1999), for the proposition that if the only theory to support a necessary element of a state law claim implicates the validity of a patent, then the claim arises under federal patent law. The relevant claim in *Hunter Douglas* was the plaintiff's assertion that the defendant committed injurious falsehood; one element of this claim is an allegation of a false statement; the only statement alleged to be false was the defendant's assertion that it had certain exclusive rights under the plaintiff's patents; and determining whether the statement in fact was false necessarily required resolving an issue of federal patent law. *Id.* On that basis, the court held, federal patent law was an essential element of the only theory supporting the injurious falsehood claim, and so the claim arose under federal patent law. *Id.*

In this case, defendants argue (1) that injury and causation are essential elements of plaintiff's state law claims; (2) that plaintiff's sole alleged injury is her inability to purchase less expensive, generic versions of Cipro, and her sole causation argument is that but for defendants' challenged conduct, a generic Cipro would have been marketed by January 1997; (3) however, Bayer's patent is good until 2003, and if its patent is valid Bayer has the right to prevent competitors from selling generic versions of Cipro until then; and (4) whether Bayer's patent is valid involves a substantial question of federal law.

Defendants' argument is somewhat misframed. Under Wisconsin's antitrust and deceptive trade practice statutes, injury and causation become relevant only after a statutory violation is established.[5] Defendants surely do not concede that they have violated these statutes. Moreover, the validity or invalidity of Bayer's patent seems to have little to do with the prices that plaintiff paid for drugs (injury) or whether, due to defendants' conduct, plaintiff paid higher prices (causation). To the contrary, defendants' argument must be that plaintiff would have to establish the invalidity of the patent in order to prove that defendants violated the relevant statutes.[6]

But defendants' framing of their argument does not affect the present analysis. To show that defendants' agreements were unlawful restraints of trade, and that the effect of those agreements was to deceive Cipro customers, plaintiffs would need to show that Bayer's patent was invalid. *Altman*, 125 F.Supp.2d at 673 ("Bayer has an absolute right to keep generics out of the

---

**5.** The antitrust statute provides a cause of action to "any person injured, directly or indirectly, by reason of anything prohibited by this chapter," Wis. Stat. Ann. § 133.18(1)(a) (West Supp.2000), while the unfair trade practice statute provides a cause of action to "[a]ny person suffering pecuniary loss because of a violation of this section," *id.* § 100.18(11)(b)(2).

**6.** Plaintiff alleges that defendants' settlement agreement was an illegal contract, combination or conspiracy in restraint of trade under § 133.03(1) of the antitrust statute, and that defendants deceived customers, in violation of the unfair trade practices statute, § 100.18(1), into believing that Cipro prices were the result of market competition rather than illegal payoffs to keep generics off the market.

market until 2003 if the patent is valid."). Although I am inclined towards *Altman*'s interpretation of *Christianson* over *Hunter Douglas*'s interpretation, it is not an easy call.

### 2. Commonality of Jurisdictional Issue

Because the jurisdictional issue is difficult, I next assess whether it is common to other cases that have been or may be transferred to the MDL proceeding. Defendants state, and plaintiffs do not dispute, that eighteen of the cases subject or potentially subject to such transfer have been removed from state courts, and that similar remand motions challenging federal question jurisdiction have arisen in eight of those cases. The jurisdictional issue is both difficult and common.

### 3. Propriety of Stay

I therefore assess whether a stay is appropriate. As previously stated, the factors to be considered include (1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Rivers*, 980 F.Supp. at 1360. Thus, in *Mauck v. Warner–Lambert Co.*, No. 7:01–CV–027–R, 2001 U.S. Dist. LEXIS 5919, at *5 (N.D.Tex. May 4, 2001), defendants moved for a stay on plaintiff's remand motion pending the JPML's decision on whether to transfer the case from Texas to New York. The court denied the stay in part on the ground that "[p]laintiff ... is a 75 year-old widow in poor health who lives in Wichita Falls, Texas ... and virtually all discovery with respect to the claims will take place in Texas." *Id.*

Because as eight other cases present the same or a similar issue as is presented here, judicial economy clearly favors a stay. Defendants contend that unless a stay is granted, they will be forced to litigate the same issue in multiple courts.

I give no weight to this argument, though, as the parties have fully briefed the remand issue before me. Plaintiff for her part contends that if a stay is granted, she "must endure indefinite delay" while waiting for the JPML to determine whether to transfer this case and, if a final transfer order is entered, waiting for the transferee court to address her remand motion. I acknowledge that delays do impose burdens but have no reason to believe that a ruling on the remand issue would be substantially delayed. Although the prejudice needed to tip the balance in a plaintiff's favor surely need not be as great as in *Mauck*, the record gives me no reason to believe that delay would be particularly injurious to this plaintiff in this case. My assessment is that the gains in judicial economy from issuing the stay outweigh the burdens to plaintiff.

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for remand is **GRANTED** to the extent that the court **FINDS** that diversity jurisdiction is lacking, but is **OTHERWISE DEFERRED UNTIL THE JPML DECIDES WHETHER TO TRANSFER THIS ACTION.**

IT IS FURTHER ORDERED that defendants' motion for a stay is **GRANTED** until the JPML decides whether to transfer this action.