BOARD OF TRUSTEES OF THE TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS, Plaintiff,

v.

WORLDCOM, INC., et al., Defendants.

State University's Retirement System Of The State Of Illinois, Plaintiff,

v.

Worldcom, Inc., et al., Defendants.

Nos. 02 C 5542, 02 C 5543.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 18, 2002.

Clinton A. Krislov, Krislov & Associates, Ltd., Dennis E. Both, Edward R. Vrdolyak, Ltd., Chicago, IL, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Plaintiff.

Stephen Novack, Stephen J. Siegal, Novack & Macey, Chicago, IL, M. Patrick McDowell, Robert David Kaufman, Brunini, Grantham, Grower & Howes, PPLC, Jackson, MS, John Peirce Morrison, Kenneth E. Rechtoris, Robert Raymond Brown, Bell, Boyd & Lloyd, Chicago, IL, H. Nicholas Berberian, Bettina Elise Levin, Neal, Gerber & Eisenberg, Allan Tracy Slagel, James Donehoo Wilson, Brett Nolan, Shefsky & Froelich, Ltd., Chicago, IL, for Defendants.

### *ORDER*

GOTTSCHALL, District Judge.

Two Illinois pension funds, the Teachers' Retirement System of the State of Illinois and the State Universities Retirement System of Illinois (collectively, the "Funds"), pursue separate but related actions alleging violations of section 11 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77k, against certain former officers and directors of WorldCom, Inc. (the

"Officers"), Arthur Andersen ("Andersen"), and nine investment and commercial banks (the "Banks"). Plaintiffs originally filed these cases in Cook County Circuit Court, but, upon request of the Officers and Banks, the cases were removed to this court pursuant to 28 U.S.C. § 1452. Andersen did not join in the removal petition. The Funds ask for immediate remand; the Banks, joined by one of the Officers, seek a stay pending a transfer decision by the Judicial Panel on Multidistrict Litigation (the "JPML"). For the reasons set forth below, these cases are stayed pending a transfer decision by the JPML.

## I. Background

Plaintiffs in both cases purchased debt securities in WorldCom's May 2001 bond sale. The subsequent collapse of the company has rendered those securities essentially worthless. (WorldCom filed for bankruptcy in the Southern District of New York on July 21, 2002.) Between June 27 and July 19, 2002, nine bondholder actions (including these two) were initiated. In all but one, plaintiffs assert claims under section 11 of the 1933 Act. Five out of nine cases were originally filed in state court and were removed to federal court on August 5, 2002. Plaintiffs have moved for remand in at least four of these five cases, including the two at bar. Thus far, one case has been remanded, *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 285 B.R. 519 (M.D.Ala.2002) (mem.op.) ("*J.P.Morgan*"), and one case has been "removed from the pending caseload pending further order of [the district court] or order of the [JPML]." *Cal. Pub. Employees Ret. Sys. v. WorldCom, Inc.*, No. CV 02–6088 (C.D.Cal. Oct. 1, 2002) (order). The last of the five removed cases is apparently still active in the Southern District of West Virginia. *W. Va. Inv. Mgmt. Bd. v. WorldCom, Inc.*, No. 1:02–1001 (S.D. W. Va. removed Aug. 5, 2002).

There have been as many as three motions to transfer before the JPML arising out of the same events at WorldCom. On August 7, 2002, the Banks requested that the five removed bondholder actions be considered "tag-along" actions. J.P.M.L. Rule 7.2(i). The JPML heard argument on the motions to transfer on September 26, 2002, and centralized much of the WorldCom litigation in the Southern District of New York on October 8, 2002.

## II. Analysis

A threshold question is which motion to decide first: the Funds' motion to remand or the Banks' motion for a stay. The Funds suggest that the remand question must be decided first because it goes to subject matter jurisdiction. Although some case law adopts this position, *see, e.g., Farkas v. Bridgestone/Firestone, Inc.*, 113 F.Supp.2d 1107, 1115 n. 8 (W.D.Ky. 2000), the better reasoned view is that a court may stay proceedings even where subject matter jurisdiction is uncertain. *Cf. Gen. Elec. Co. v. Byrne*, 611 F.2d 670 (7th Cir.1979) (per curiam) ("[I]f the Multidistrict Panel had transferred these cases prior to the entry of the remand order . . . , the transferee court would have had jurisdiction to consider the motion for remand after transfer."). The fullest discussion of the methodological issues raised by simultaneous remand and stay motions in the MDL context appears in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044 (E.D.Wis.2001), which settles on the following three-step approach:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.

If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding....

.    .    .    .    .

Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

*Id.* at 1049.

This court generally agrees with the reasoning and methodology of *Meyers,* although the analytical divisions between the three steps are perhaps not as neat as the quoted language implies. In determining the appropriateness of a stay, the court considers the interests of judicial economy and the balance of hardships to the proponent and opponent of the stay. *Id.* (citing *Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997)). When the merits of a remand motion are easy, a decision requires little judicial time and a stay would merely postpone the inevitable. Similarly, when remand motions in cases potentially subject to MDL consolidation raise unique issues of law or fact, channeling the decisions to a single court would result in little or no savings of judicial resources. The threat of inconsistent judgments in either case is *de minimus.* In this sense, the appropriateness of a stay is arguably implicit in the analysis performed at steps one and two. And although *Meyers* does not say so explicitly, there is a fourth step. When the balance

of equities weighs heavily against a stay, it may well be appropriate for a court to immediately decide even a difficult and duplicative remand question.

■ The motion to remand or abstain in this case raises thorny questions of law, as two recent district court opinions from the Middle District of Alabama demonstrate. *J.P. Morgan,* (mem.op.); *Ret. Sys. of Ala. v. Merrill Lynch & Co.,* 209 F.Supp.2d 1257 (M.D.Ala.2002) (*"Merrill Lynch"*). The court in *J.P. Morgan,* a WorldCom bondholder action, ordered the parties to show cause why that case should not be sent back to state court for the same reasons discussed in an Enron-related decision, *Merrill Lynch.* A critical question in both cases was (as it is here) whether the bankruptcy removal statute, 28 U.S.C. § 1452, requires all defendants to join a notice of removal. The court strongly suggested that unanimity was required, but pointedly declined to base its decisions on this ground in light of the wealth of case law (including case law from three courts of appeals) reaching the opposite conclusion. *J.P. Morgan,* 285 B.R. 519, 523–525; *Merrill Lynch,* 209 F.Supp.2d at 1261–64.[1]

A second legal quagmire present in both Alabama cases and the cases at bar is the scope of "related to" jurisdiction under 28 U.S.C. § 1334. More specifically, the parties dispute whether potential indemnity claims are "related to" bankruptcy proceedings. There is apparently a circuit split on this issue, *J.P. Morgan,* 285 B.R. 519, 526–27 n. 12, and the Seventh Circuit has weighed in only in dicta (if at all), *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 750 (7th Cir.1989). In evalu-

---

1. Notably, a proper reading of the statute would appear to dictate partial rather than complete remand—*i.e.,* remand only of the claims against Andersen since Andersen was the lone defendant not to join in the removal request. *See* S. Elizabeth Gibson, *Removal of Claims Related to Bankruptcy Cases: What Is a "Claim or Cause of Action"?,* 34 UCLA L.Rev. 1 (1986). No one in the case at bar urges this result or briefs the question of whether keeping the claims together favors equitable remand.

ating essentially the same arguments forwarded in the present cases, the Alabama district court concluded that "related to" jurisdiction was uncertain. *J.P. Morgan*, at 530. Again, the court declined to base its decision on this ground but cited the uncertainty as support for discretionary abstention.

It would be possible to avoid both of these tricky issues if, as the Funds argue, 1933 Act claims cannot be removed under 28 U.S.C. § 1452. The basis for this argument is section 22 of the 1933 Act, which states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). Section 16(c) relates to certain class actions and is not applicable here. *Id.* § 77p(c). Congress added this exception to the general rule of nonremovability in 1998. The failure to provide an exception for bankruptcy removal, the Funds contend, demonstrates that no such exception exists.

The Officers and Banks respond with the bankruptcy removal provision:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). In support of removability, defendants emphasize the word "any," the presence of two specific exceptions, and the absence of any exception for 1933 Act claims. Defendants also point out that, unlike the general removal provision, the bankruptcy removal provision does not include the limitation "[e]xcept as otherwise expressly provided by Act of Congress." *Id.* § 1441(a). Courts have relied upon the omission of this phrase from another removal provision, § 1441(c), to conclude that that provision applies to claims made unremovable by specific legislation.[2] *See, e.g., United States Indus., Inc. v. Gregg*, 348 F.Supp. 1004 (D.Del. 1972), *rev'd on other grounds*, 540 F.2d 142 (3d Cir.1976).

The Funds prefer different case law. One district court in a § 1452 case has held that 1933 Act claims are not removable. *Ariail Drug Co. v. Lease Partners Corp.*, No. CIV. A. 96–G–0708–S, 1996 WL 1060890, at *4 (N.D.Ala. May 23, 1996). However, defendants there apparently challenged the foundation, not the removability, of the 1933 Act claim. *Id.* The court's failure to discuss the tension between section 22 and § 1452 is understandable in light of this concession but limits the persuasiveness of its decision. The Funds also cite case law holding that Jones Act suits are not removable under § 1452. *See McRae v. Lykes Bros.*, No. CA 98–3240, 1998 WL 898467, at *1 (E.D.La. Dec. 21, 1998); *Kinder v. Wis. Barge Line, Inc.*, 69 B.R. 11, 12 (E.D.Mo. 1986). If the explicit nonremoval provision for Jones Act cases trumps § 1452, the argument goes, so too should section 22. Defendants' attempt to distinguish the

**2.** Although no one makes the point here, the significance of the omission is arguably enhanced by the fact that § 1441 served as the model for the original version of § 1452. 2 Alan N. Resnick & Eugene M. Wypyski, *Bankruptcy Reform Act of 1978: A Legislative History*, doc. 22, at 35 (1979). It is also notable that the proposing commission believed that the original version of § 1452 would to some extent supersede § 1445, a provision which, like section 22 of the 1933 Act, provided that certain types of claims were generally nonremovable. *Id.*

Jones Act cases based on the location of the nonremoval provision is not particularly convincing, but neither is the reasoning of these cases. Both simply cite case law holding that Jones Act claims cannot be removed under § 1441(a) without discussing the more sweeping language of § 1452. *McRae*, 1998 WL 898467, at *1 n. 6 (citing *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 206 (5th Cir.1993)); *Kinder*, 69 B.R. at 12 (citing *Pate v. Standard Dredging Corp.*, 193 F.2d 498 (5th Cir.1952)).

In short, there is no easy escape from the apparent conflict between section 22 and § 1452. Deciding the motion to remand will require untangling at least one of the three legal snarls described above. The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding. Plainly, the answer is yes. It appears that the same issues have been raised in cases pending in California and West Virginia, which the Banks have requested the JPML to treat as "tag-along" actions. Given the magnitude of the WorldCom debacle the number of comparable cases may very well increase.[3] The court therefore proceeds to consider the Banks' request for a stay of proceedings.

■ Judicial economy favors a stay. Having one court rather than three decide complex jurisdictional issues obviously saves judicial resources. To be sure, remanding these cases immediately would obviate the need for action by the JPML, but the transfer decision is relatively straightforward and even this slight savings may be illusory. Unless the stay in the California action is lifted, the JPML will have to make essentially the same transfer determination in that case. The Funds argue that "[j]udicial economy will

best be served by addressing the remand issue because a determination on this issue will facilitate litigation in the appropriate forum." (Pls.' Opp. Mot. Stay Proceedings at 4, 6) (quoting *Villarreal v. Chrysler Corp.*, No. C–95–4414, 1996 WL 116832, at *1 (N.D.Cal. Mar. 11, 1996)); *see also Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1048 (D.Kan.1999) ("For purposes of judicial economy, the jurisdictional issue should be resolved immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue."). Channeling litigation promptly into the appropriate forum is clearly a good thing, but how it serves judicial economy more than a stay of proceedings is a mystery. Almost by definition, little or no judicial resources are expended during the pendency of a stay.

Neither side makes an overwhelming showing on prejudice. The Banks argue that it is a hardship to simultaneously defend themselves in multiple jurisdictions. Because they have already fully briefed the remand issue in this court, however, this argument has less force than it otherwise might. *Meyers*, 143 F.Supp.2d at 1049. Still, litigating essentially the same claims in courts all over the country is no doubt burdensome. The Banks also cite the risk of inconsistent rulings. *See Weinke v. Microsoft Corp.*, 84 F.Supp.2d 989, 990 (E.D.Wis.2000). This risk appears genuine given the difficulty of the jurisdictional issues presented. Indeed, one court has already abstained on discretionary rather than jurisdictional grounds, and another has stayed proceedings.

On the other side of the equation, the Funds argue that a stay could lead to

---

**3.** During the pendency of these motions, an additional related action was removed to this

district. *Ill. State Bd. of Inv. v. Ebbers*, No. 02–C–6789 (N.D. Ill. removed Sept. 24, 2002).

substantial delay and to having the remand motion heard in defendants' preferred forum. The Funds estimated a month ago that there would be at least a three to five month delay before the transfer decision and speculate that, given the morass of litigation pending against WorldCom, a remand decision could take the transferee court an additional year or more. The Banks postulate that because the Funds have already filed formal objections the JPML's decision on transfer could come at any time.[4] The Banks also dismiss the Funds' post-transfer delay estimate as pure speculation. But predicting the future is necessarily speculative and it is reasonable to suppose that any mortal judge will need substantial time to sift through the WorldCom matters should they end up in a single forum. On the other hand, while delay is always regrettable, the Funds fail to explain how delay in this case will substantially affect their rights. The Funds' charge of forum-shopping suffers from a similar deficiency. It is inevitable in multidistrict litigation that a plaintiff's choice of forum will be overridden. If these cases are in fact transferred to New York it will not be because the Banks prefer that location but because the JPML determines that consolidation there serves the interests of convenience, justice, and efficiency. 28 U.S.C. § 1407(a).

On balance, this court believes that the interests of judicial economy and the threat of inconsistent rulings outweighs the prejudice to the Funds from delay. Accordingly, these cases are stayed pending a transfer decision by the JPML.

---

4. By not mentioning the putative "tag-along" actions in its October 8, 2002 order, the JPML apparently rejected this approach in favor of the standard procedure outlined in J.P.M.L. Rules 1.1, 7.4, and 7.5.