Kathleen **CONROY**, Plaintiff,

v.

**FRESH DEL MONTE PRODUCE INC., et al., Defendants.**

**No. C04–1520 SBA.**

United States District Court, N.D. California.

July 8, 2004.

Jenelle Welling and Robert S. Green, Green & Jigarjian, LLP, San Francisco, CA, for Plaintiff.

John F. Cove, Jr. and Kieran P. Ringgengberg, Boies, Schiller & Flexner LLP, Oakland, CA, Stuart H. Singer, Carlos M. Sires, and Carl E. Goldfarb, Boies, Schiller & Flexner LLP, Fort Lauderdale, FL, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO STAY AND GRANTING PLAINTIFF'S MOTION TO REMAND

ARMSTRONG, District Judge.

This matter comes before the Court on two motions: (1) the motion of Kathleen

Conroy ("Plaintiff") to remand the proceedings to state court [Docket No. 11]; and (2) the motion of Fresh Del Monte Produce, et al., ("Defendants") to stay Plaintiff's motion pending transfer to the multi-district litigation panel [Docket No. 16]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES Defendants' Motion to Stay and GRANTS Plaintiff's Motion to Remand.

## BACKGROUND

### A. The Dispute

The following factual summary is derived from the allegations of Plaintiff's complaint (the "Complaint"), which are taken as true solely for purposes of resolving the motions. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995).

Defendants, in conjunction with the Maui Pineapple Company ("Maui") developed two pineapple hybrids: 73–114 and 73–50. (Compl.¶ 40.) These genetically engineered pineapples were higher in sugar and vitamin C content, enjoyed higher resistance to disease, and had a longer shelf life. (*Id.*) Defendants began growing the 73–114 variety in the late 1980's and renamed it MD–2. (Compl.¶ 43.) Defendants sought a patent for the MD–2 variety. The patent application was denied, however, by the Patent and Trademark Office ("PTO") on two grounds: Maui's refusal as co-owner of the MD–2 to agree to the joint patent terms; and Defendants' pre-patent sales of the MD–2. (Compl.¶ 46.) Defendants then sought and obtained a patent on the other pineapple, the 73–50 variety, which Defendants called the CO–2 variety. The PTO granted Defendants the '863 patent for this variety. (Compl.¶ 47.)

Plaintiff alleges that the CO–2 and MD–2 are genetic siblings and virtually identical varieties. (Compl.¶ 48). Plaintiff alleges that Defendants committed fraud on the PTO by failing to disclose this information. But for Defendants' misstatements and omissions, the PTO would not have issued the '863 Patent because the earlier MD–2 pineapple rendered the CO–2 obvious and did not meet the novelty requirement. (Compl.¶ 50.) Defendants also did not disclose that Maui held an ownership interest in the CO–2 variety. (Compl.¶ 51.) Nor had Defendants disclosed that Maui had sold the C0–2 variety prior to the submission of the patent application. (Compl.¶ 54.) Such sales would have disqualified the CO–2 from patentability. (Compl.¶ 46.)

Upon issuance of the '863 Patent, Plaintiff alleges that Defendants engaged in an aggressive and anti-competitive practice in which they used the '863 Patent to threaten competitors producing the MD–2 pineapple, even though the '863 Patent covered only the C0–2 pineapple. (Compl.¶¶ 62, 70.) For example, Defendants' former Vice President of North America Marketing, Michael Pereira stated in an internal memorandum that the '863 patent would hopefully "confuse our competition," leading them to believe that the MD–2 was patented. (Compl.¶ 59.) Defendants sent numerous cease and desist letters to competitors. Mr. Pereira acknowledged during his deposition in *Del Monte Fresh Produce Co., et al., v. Dole Food Co. Inc., et al.,* that these letters implied that the MD–2 was covered by the '863 Patent. (Compl.¶ 64.) One of Defendants' plant scientists testified to the same. (Compl.¶ 65.)

In light of this evidence, Mag. Judge Simonton in *Del Monte Fresh Produce Co., et al., v. Dole Food Co. Inc., et al.* held that Defendants had used these threatening

letters to intentionally mislead and defraud their competitors into believing that Defendants had a United States patent on the MD–2 pineapple and that Defendants would take legal action to protect the allegedly patented MD–2 pineapple if their competitors ignored their demands to cease production and marketing of the MD–2 pineapple. (Compl.¶ 66.)

Among the parties Defendants sued were Maui and Dole. Several years into the litigation, Defendants admitted that due to pre-patent application sales by Maui of the CO–2 pineapple, the '863 Patent was invalid. Defendants did not state, however, that they had prior knowledge of these sales when they filed the '863 application. (Compl.¶ 78.) In May 6, 2003 Defendants filed a disclaimer of their patent rights with the PTO. (Compl.¶ 79.)

### B. Plaintiff's Causes of Action

Based on the above allegations, Plaintiff filed a complaint in the Superior Court of Alameda, California for violations of the California Cartwright Act; California Business and Professions Code § 16720 *et seq.;* the California Unfair Competition Law, Business and Professions Code § 17200 *et seq.;* common law prohibitions against monopolies, and unjust enrichment. Plaintiff did not cite to nor invoke federal statutes, rules or regulations relating to patent law or any other federal law.

### C. Similar Suits Against Defendants

The findings by Mag. Judge Simonton in *Del Monte Fresh Produce Co., et al., v. Dole Food Co. Inc., et al.,* and Defendants' subsequent disclaimer of the '863 Patent have given rise to a dozen separate suits against Defendants throughout the country. Many of these suits state causes of actions similar to Plaintiff's, but at least a few are based on other states' laws.

Four of the actions are direct purchaser actions and they have been consolidated in federal court in the Southern District of New York. Two indirect purchaser actions are also pending against Defendants in that court. That court directed that the plaintiffs in those six actions file a joint amended complaint.

Six indirect purchaser actions (including Plaintiff's) have been filed in five other courts in California, Tennessee, Arizona and Florida. Apparently, these cases were originally filed in state courts, but Defendants removed each one to federal court.

In June 2004, Defendants invoked 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multi–District Litigation to move the Judicial Panel on Multi–District Litigation ("MDL") for an order transferring all pretrial proceedings in these cases, as well as any future related actions to the United States District Court for the Southern District of New York.

### D. Procedural History

On April 19, 2004, Defendants removed this case from the Superior Court of Alameda to this Court on the grounds that it raised a federal question: "The Complaint on its face attacks a patent and alleges that the patent was obtained through fraud on the U.S. Patent and Trademark Office." (Def's Notice of Removal at 2:10–11.)

Plaintiff now moves for the case to be remanded on the grounds that the Complaint does not raise a federal question. In the meantime, Defendants seek to stay Plaintiff's motion to remand pending the MDL Panel's decision on whether this case should be related to, and therefore transferred to, the Southern District of New York.

## MOTION TO STAY

### A. Legal Standard

■ The decision to grant or deny a temporary stay of proceedings pending a ruling on the transfer of the matter to the MDL court lies within this Court's discretion. *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Good v. Prudential Ins. Co. of Am.*, 5 F.Supp.2d 804, 809 (N.D.Cal.1998); *see also* Rules of the Judicial Panel on MDL, Rule 1.5 ("The pendency of a motion ... before the Panel concerning transfer ... of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

Often, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system. See 28 U.S.C. § 1407; *see also, Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360–61 (C.D.Cal. 1997) (staying action pending transfer decision by MDL panel after finding that judicial resources would be conserved and defendant would not be prejudiced).

■ In deciding whether to rule on the motion to remand, courts consider whether the motion raises issues likely to arise in other actions pending in the MDL transferee court. *Shields v. Bridgestone/Firestone, Inc.*, 232 F.Supp.2d 715, 718 (E.D.Tex.2002). The fullest discussion of the methodological issues raised by simultaneous remand and stay motions in the MDL context appears in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1048–1049 (E.D.Wis.2001), which settles on a sensible three-step approach. First, the court should give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. Although the *Meyers* court did not expressly discuss it, preliminary scrutiny to the merits appears to be necessary because the venue statute, 28 U.S.C. § 1404(a), does not vest courts with unlimited power to transfer a civil action to any federal district. Rather, § 1404(a) limits transfer of a civil action to "any other district or division where it might have been brought." A district or division is one where the action "might have been brought" if, among other things, when the action began the proposed transferee district court would have had subject matter jurisdiction over the action. In other words, because a court may only transfer a case to a venue where the case could have been brought originally, questions regarding subject matter jurisdiction must be resolved before any such transfer.

Second, if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. Third, if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action. *Meyers*, 143 F.Supp.2d at 1048–49; *see also, Board of Trustees of Teachers' Retirement Sys., of State of Illinois v. Worldcom, Inc.*, 244 F.Supp.2d 900, 903 (N.D.Ill.2002). The Ninth Circuit has not expressly adopted this approach. For the purposes of this case, however, the Court finds that the *Meyers* three-step approach is helpful. Accordingly, the Court incorporates it in its analysis.

### B. Application

■ The first step of the *Meyers* analysis demonstrates that a stay is not appropriate. The question at hand is whether

each and every one of Plaintiff's claims requires a determination of federal law, or whether "an alternative theory of relief exists for each claim alleged in the complaint, one not dependent upon federal law....." *Ultramar America Limited v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir.1990); *see also, Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1315 n. 1 (9th Cir.1997) ("[Plaintiff] did not allege a specific state or federal theory. In these circumstances, removal would have been improper, because an alternative state-law theory exists."); *Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir.1996) ("[I]f a single state-law based theory of relief can be offered for each of the three causes of action in the complaint, then the exercise of removal jurisdiction was improper.").

■ Moreover, a stay would be judicially inefficient. Although a stay would allow one court to rule on several pending questions of jurisdiction, it would require that court to apply the laws of separate states and separate circuits to each separate plaintiff's jurisdictional claims. This Court is readily familiar with federal law, Ninth Circuit law, and California law, the laws applicable to Plaintiff's motion and Complaint. Moreover, the parties have already fully briefed the issue of remand. Thus, staying the motion will not save either party any time. Finally, it is in the interest of judicial economy to decide issues of jurisdiction as early in the litigation process as possible. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue.

Accordingly, Defendants' Motion to Stay is DENIED. The Court will address Plaintiff's Motion to Remand.

## MOTION TO REMAND

### A. *Legal Standard*

Federal courts may entertain any civil action which is based upon a claim or right arising under the Constitution, treaties or laws of the United States. 28 U.S.C. § 1331. District courts have original jurisdiction of any civil action arising under any Act of Congress relating to patents. 28 U.S.C. § 1338(a). Precedent regarding § 1331 applies equally to § 1338 jurisdiction grounds. *Hunter Douglas Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1324 (Fed.Cir.1998), *overruled in part on other grounds, Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed Cir.1999). A civil action brought in state court may be removed to federal court only if a federal court could have exercised original jurisdiction in the case. 28 U.S.C. § 1441(a).

■ Jurisdiction under § 1338(a) extends only to those cases in which (1) a well pleaded complaint establishes either that federal patent law creates the cause of action; or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well pleaded claims. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). This two-prong alternative test is often called the *Christianson* test. "The policy behind *Christianson* is that patent law is intended to be applied uniformly by the federal courts. If state courts were able to make rulings on any anti-competitive theory that could nullify patent rights, uniformity in patent law would be a mirage." *In re Tamoxifen Citrate Antitrust Litigation*, 222 F.Supp.2d 326, 333 (E.D.N.Y.2002).

## B. Well–Plead Complaint Rule

■■ The first prong of the *Christianson* test, "[t]he well-pleaded complaint rule is a powerful doctrine." *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033 1040 (9th Cir.2003) (internal quotations and citations omitted). Under the rule, whether a claim 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.' *Id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Similarly, a case raising a federal defense does not "arise under" federal law "even if the defense is anticipated in the complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Plaintiff did not plead any federal claim on the face of her Complaint. She has not requested relief under patent law. Rather, she brought California state and common law causes of action—California Cartwright Act; California Business and Professions Code § 16720 *et seq.;* the California Unfair Competition Law, Business and Professions Code § 17200 *et seq.;* common law prohibitions against monopolies, and unjust enrichment. Accordingly, under the first prong of the *Christianson* test, this Court does not have jurisdiction.

## C. Substantial Question of Federal Patent Law

■ Under the alternative prong of the *Christianson* test, a court "must ascertain whether *all* the theories by which a plaintiff could prevail on a claim *rely solely* on resolving a substantial question of federal patent law." *Hunter Douglas,* 153 F.3d at 1328–29 (emphasis added). "[F]ederal jurisdiction generally exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Holmes Group v. Vornado Air Circulation Sys. Inc.*, 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002). Nothing in the defendant's answer, not even an affirmative defense or counterclaim, can usurp the plaintiff's choice of forum. *Id.* Challenges to the validity or enforceability of a patent, however, raise a federal question in the same way that an infringement claim otherwise would. Invalidity, enforceability and infringement are "substantial in the federal scheme, for they are essential to the federally created property right: one determines whether there is a property right, another whether the right is enforceable, and the third what is the scope of that right." *Hunter Douglas,* 153 F.3d at 1330. *See also, In re Tamoxifen Citrate Antitrust Litigation,* 222 F.Supp.2d at 333.

## D. Application

Throughout the Complaint, Plaintiff has alleged that Defendants committed fraud upon the PTO. She alleges that in prosecuting the '863 Patent, Defendants did not disclose the prior art of the MD–2 pineapple, nor that Maui had an ownership interest in the patent, nor the pre-patent application sales. Generally, such allegations necessarily involve questions of patent law, including what information the patent applicant had a duty to disclose and what information was material to the patent application. This is because conduct before the PTO that may render a patent unenforceable is broader than "common law fraud." *Norton v. Curtiss,* 57 C.C.P.A. 1384, 433 F.2d 779 (Cust. & Pat.App.1970). It includes failure to disclose material information, or submission of false material information with an intent to mislead. *Id.* Also, an allegation of sham litigation requires the court to determine whether the

targeted litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

Notably, however, these are not the only allegations Plaintiff pleads. She alleges that Defendants intentionally deceived competitors and growers. Knowing that the '863 Patent covered only the CO–2 Patent, Defendants nevertheless threatened competitors and growers who grew the unpatented MD–2 pineapples. Defendants' own internal memorandum allegedly stated that the '863 patent would hopefully "confuse our competition," leading them to believe that the MD–2 was patented. (Compl.¶ 59.) Defendants own executives and scientists, in depositions taken for *Del Monte Fresh Produce Co., et al., v. Dole Food Co. Inc., et al.,* stated that Defendants' threat letters implied that the MD–2 pineapple was covered by the '863 Patent when it was not.

In essence, Plaintiff alleges that Defendants knew that the MD–2 pineapple was not protected under the '863 Patent (their patent application for the MD–2 pineapple had in fact been rejected), but nevertheless deceived growers into believing that it was. In this respect, it is entirely irrelevant whether Defendants fraudulently obtained the '863 patent. The '863 could be valid; the harm alleged did not arise out of the validity or invalidity of the '863 Patent. It arises out of the misrepresentations regarding the MD–2 pineapple. These alleged acts of fraud and misinformation do not implicate Defendants' patent rights; they implicate Defendants' actions in conducting business, in competing with other pineapple growers and sellers, and in inflating pineapple prices. Under the facts alleged in the Complaint, Plaintiff would be entitled to relief on each and every one

of her causes of action without resolution of patent law issues.

Accordingly, Plaintiff can prevail on all of her causes of action without needing to prove fraud on the PTO. *See Coker v. Purdue Pharma Co.*, 314 F.Supp.2d 777 (W.D.Tenn.2004) (no federal jurisdiction found, even where plaintiff had alleged fraud on the PTO, because complaint demonstrated an alternative theory by which plaintiff could succeed in proving his state law claims without the court having to resolve questions of patent law). Even if Defendants' strongest defense is grounded on their good faith belief that the '863 Patent somehow covered the MD–2 pineapple, their defense cannot serve as grounds for federal jurisdiction. *Holmes Group*, 535 U.S. at 831, 122 S.Ct. 1889.

Accordingly, Plaintiff's motion to remand is GRANTED.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Defendants' Motion to Stay is DENIED; Plaintiff's Motion to Remand is GRANTED. All dates are vacated. The Clerk of the Court shall transfer the file to the Superior Court of Alameda.

IT IS SO ORDERED.